UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re:                                                    Chapter 11

CALPINE CORPORATION, et al.,                              Case No. 05-60200 (BRL)

                                 Reorganized Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MARK DALEY,
                        Appellant,                      Case No. 1:08-cv-3880 (DAB)

       v.                                                ECF Case

CALPINE CORPORATION, et al.,

                        Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## APPELLANT'S BRIEF IN SUPPORT OF APPEAL
## PURSUANT TO BANKRUPTCY RULE 8009

                                   WANDER & ASSOCIATES, P.C.
                                   Attorneys for Appellant Mark Daley
                                   641 Lexington Avenue, 21st Floor
                                   New York, New York 10022
                                   (212) 751-9700

Of Counsel
David Wander, Esq.

# TABLE OF CONTENTS

*Page*

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ............................................1

STATEMENT OF ISSUES PRESENTED........................................................................2

STANDARD OF APPELLATE REVIEW.........................................................................3

STATEMENT OF THE CASE.......................................................................................4

A.    *Procedural History* .........................................................................................4

B.    *Statement of Facts*..........................................................................................4

    1.    Calpine Corporation.................................................................................4

    2.    Calpine's incentive plan for its Marketing & Sales group ...........................5

    3.    Mr. Daley's extraordinary performance in 2005 .......................................6

    4.    Calpine's sufficient cash reserves after its chapter 11 filing .....................7

    5.    The President of Calpine Energy Services told Mr. Daley
          2005 bonuses will be paid......................................................................7

    6.    Calpine's CEO later sent Mr. Daley a form letter stating 2005
          bonuses will *not* be paid.......................................................................8

    7.    Mr. Daley's Claim ...............................................................................9

    8.    Calpine's successful reorganization..........................................................9

    9.    Calpine's objection to the Claim .............................................................10

    10.   The Bankruptcy Court's Decision ...........................................................12

SUMMARY OF ARGUMENT ......................................................................................12

ARGUMENT ...........................................................................................................14

    I.    THE BANKRUPTCY COURT'S HOLDING THAT THE
          CLAIM WAS LEGALLY INSUFFICIENT WAS AN
          ABUSE OF DISCRETION BECAUSE CALPINE
          BREACHED THE PLAN ........................................................................14

    II.   THE BANKRUPTCY COURT'S HOLDING THAT THE
          CLAIM WAS LEGALLY INSUFFICIENT WAS AN
          ABUSE OF DISCRETION BECAUSE CALPINE
          BREACHED THE IMPLIED COVENANT OF GOOD
          FAITH AND FAIR DEALING.................................................................17

III.   THE BANKRUPTCY COURT'S HOLDING THAT THE
       DOCTRINE OF PROMISSORY ESTOPPEL WAS
       UNAVAILING WAS AN ABUSE OF DISCRETION..........................................21

CONCLUSION..........................................................................................................................22

# TABLE OF AUTHORITIES

*Page*

*Cases*

*A.J. Heel Stone, L.L.C. v. Evisu Int'l, S.R.L.*, 2006 U.S. Dist. LEXIS
34152 at *7-8 (S.D.N.Y. May 25, 2006) ........................................................................ 14-15

*Asmus v. Pacific* Bell, 999 P.2d 71, 79 (Cal. 2000) ...................................................................19

*Babitt v. Vebeliunas (In re Vebeliunas),* 332 F.3d 85, 90 (2d Cir. 2003) ......................................3

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) ......................................................15

*Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) .......................................................................15

*Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995) ..........................................15

*Brandt v. Lockheed Missiles & Space Co.*, 201 Cal. Rptr. 746, 748 (Cal.
Ct. App. 1984) ..............................................................................................................20

*Cal Lettuce Growers v. Union Sugar Co.*, 289 P.2d 785, 791 (Cal. 1955) ..................................18

*Carma Developers California Inc. v. Marathon Development California,*
*Inc.,* 826 P.2d 710, 726 (Cal. 1992) .......................................................................17, 18

*Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) ....................................................................14

*Div. of Labor Law Enforcement v. Transpacific Trans. Co.*, 137 Cal. Rptr.
855, 860 (Cal. Ct. App. 1977) ...........................................................................21, 22

*Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms.*, 298 F.3d 136,
140 (2d Cir. 2002) .........................................................................................................15

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re*
*Manville Forest Prods. Corp.)*, 126 F.3d 380, 390 (2d Cir. 1997) ..............................3

*Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1112 n.18 (Cal. 2000) ....................................................18

*ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir.
2001) .............................................................................................................................14

*In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999) ...............................................................3

*In re Bethlehem Steel,* 2003 U.S. Dist. LEXIS 12909, at *20 (S.D.N.Y.
July 23, 2003) .................................................................................................................3

*In re Integrated Resources, Inc.*, 157 B.R. 66, 72 (S.D.N.Y. 1993) ...............................................4

*Page*

**Cases**

*In re Manshul Construction Corp.*, 1998 U.S. Dist. LEXIS 10885, at *6-7
(S.D.N.Y. July 20, 1998) ..........................................................3, 4

*In re Metiom, Inc.*, 301 B.R. 634, 639-40 (Bankr. S.D.N.Y. 2003) ..............................14

*In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) ....................................3

*J. W. Van Hook v. Southern California Waiters Alliance, Local 17*, 323
P.2d 212, 220-21 (Ct. App. Cal. 1958) ..........................................22

*Kelly v. Skytel Communications Inc.*, No. 00-17089, 2002 WL 46163, at
*9, n.1 (9th Cir. Feb. 25, 2002)..................................................20, 21

*Kendall v. Pestana,* 709 P.2d 837, 844 (Cal. 1985)..............................................17, 18

*Love v. Fire Ins. Exchange,* 271 Cal. Rptr. 246, 256 (Cal. Ct. App. 1990)..................................17

*McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1152 (N.D. Cal.
2002) .................................................................................18

*Mission Ins. Group, Inc. v. Merco Construction Engineers, Inc.,*  195 Cal.
Rptr. 781, 784 (Cal. Ct. App. 1983) ..................................................18

*Philips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) ......................................3

*Pro-Tec Servs., LLC v. Inacom Corp. (In re Inacom Corp.)*, No. 00-2426,
2004 U.S. Dist. LEXIS 20822, at *3-4 (D. Del. Oct. 4, 2004) ..................................4

*Racine & Laramie, Ltd., Inc. v. Val. Dep't of Parks Recreation*, 124 Cal.
Rptr. 2d 335, 340 (Cal. Ct. App. 1992) ..................................................18

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748
F.2d 774,779 (2d Cir. 1984) ..................................................15

*Schwartz v. Aquatic Development Group, Inc. (In re Aquatic Development
Group, Inc.),* 352 F.3d 671, 678 (2d Cir. 2003)..................................................3

*Shugrue v. Air Line Pilots Ass'n, Int'l*, 922 F.2d 984, 988 (2d Cir. 1990)....................................3

*Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2002) ..........................................15

*Universal Sales Corp. v. Cal. Mfg. Co.*, 128 P.2d 665, 677 (Cal. 1942)......................................18


**Statutes**

28 U.S.C. § 158(a)(1) (2006) ..................................................................1

*Page*

**Statutes**

Fed. R. Civ. P. 12(b)(6) ........................................................................................13, 14

Fed. R. Bankr. P. 7012(b)(6) ........................................................................................14

Fed. R. Bankr. P. 8009 ..................................................................................................1

Fed. R. Bankr. P. 9014(c) ............................................................................................14

Cal. Civ. Code § 1648 (2007) ......................................................................................19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                                  Chapter 11

CALPINE CORPORATION, et al.,                            Case No. 05-60200 (BRL)

                          Reorganized Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MARK DALEY,

                          Appellant,                    Case No. 1:08-cv-3880 (DAB)

        v.                                              ECF Case

CALPINE CORPORATION, et al.,

                          Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## APPELLANT'S BRIEF IN SUPPORT OF APPEAL
## PURSUANT TO BANKRUPTCY RULE 8009

Appellant Mark Daley, by his attorneys, Wander & Associates, P.C., submits this brief, pursuant to Bankruptcy Rule 8009, in support of his appeal from the Memorandum Decision and Order Granting Debtors' Motion To Disallow Claim For Bonus Compensation entered on March 12, 2008, in the United States Bankruptcy Court for the Southern District of New York (the "Decision").

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) which gives the district courts of the United States jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts.  *See* 28 U.S.C. § 158(a)(1) (2006).  The Decision is a final order subject to appeal under 28 U.S.C. § 158(a)(1).

## STATEMENT OF ISSUES PRESENTED

The following issues are presented on appeal:[1]

1.      Did the Bankruptcy Court err in finding that the Calpine Marketing and Sales 2003 Incentive Plan (the "Plan") provides Calpine Corporation ("Calpine") unrestricted discretion regarding the decision to fund or not fund the bonus pool?

2.      Did the Bankruptcy Court err in finding that the Plan provides Calpine unrestricted discretion regarding the decision to pay or not pay bonus compensation?

3.      Did the Bankruptcy Court err as a matter of law in failing to conclude that the determination by Calpine's Chairman not to recommend funding of the 2005 bonus pool breached Section IX of the Plan?

4.      Did the Bankruptcy Court err as a matter of law in failing to conclude that the determination by Calpine's Chairman not to recommend funding of the 2005 bonus pool violated the implied covenant of good faith and fair dealing?

5.      Did the Bankruptcy Court err as a matter of law in concluding that Calpine's decision to not pay bonuses for the year 2005 was expressly permitted by the Plan?

6.      Did the Bankruptcy Court err as a matter of law in concluding that Mr. Daley's proof of claim (the "Claim") was legally insufficient?

7.      Did the Bankruptcy Court err as a matter of law by failing to apply the proper standard of review in granting what was, in effect, a motion to dismiss for failure to state a claim upon which relief may be granted?

8.      Did the Bankruptcy Court err as a matter of law in concluding that the doctrine of promissory estoppel was unavailing to support the Claim?

---

[1] Appellant is proceeding with issues 1-8.

9.      Did the Bankruptcy Court err as a matter of law in concluding that the doctrine of estoppel by conduct was unavailing to support the Claim?

10.     Did the Bankruptcy Court err as a matter of law in concluding that the doctrine of unjust enrichment was unavailing to support the Claim?

## STANDARD OF APPELLATE REVIEW

The issues presented in this appeal include (i) conclusions of law, (ii) mixed questions of fact and law, and (iii) questions of fact.  Conclusions of law, and mixed questions of fact and law, are subject to *de novo* review.  *See In re Bethlehem Steel,* 2003 U.S. Dist. LEXIS 12909, at *20 (S.D.N.Y. July 23, 2003) ("A district court reviews the bankruptcy court's . . . conclusions of law *de novo*."); *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999); *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994);  *In re Manshul Construction Corp.*, 1998 U.S. Dist. LEXIS 10885, at *6-7 (S.D.N.Y. July 20, 1998); s*ee also Babitt v. Vebeliunas (In re Vebeliunas),* 332 F.3d 85, 90 (2d Cir. 2003) ("Mixed questions of fact and law are subject to *de novo* review.").  "Contract interpretation as a question of law is also reviewed de novo on appeal."  *Philips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).  Questions of fact are subject to the "clearly erroneous" standard.  *See Shugrue v. Air Line Pilots Ass'n, Int'l*, 922 F.2d 984, 988 (2d Cir. 1990); *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 126 F.3d 380, 390 (2d Cir. 1997).  The district court must reverse a bankruptcy court's order that rests on an error of law, such as the application of the wrong legal principle, or a clearly erroneous factual finding.  *Schwartz v. Aquatic Development Group, Inc. (In re Aquatic Development Group, Inc.),* 352 F.3d 671, 678 (2d Cir. 2003).

A bankruptcy court's ruling that is based on erroneous conclusions of law, erroneous factual findings or misapplication of the facts to the law is an abuse of its discretion. *See In re*

*Manshul Construction Corp.*, 1998 U.S. Dist. LEXIS 10885, at *6-7 (S.D.N.Y. July 20, 1998);

*In re Integrated Resources, Inc.*, 157 B.R. 66, 72 (S.D.N.Y. 1993); *see also Pro-Tec Servs., LLC

v. Inacom Corp. (In re Inacom Corp.)*, No. 00-2426, 2004 U.S. Dist. LEXIS 20822, at *3-4 (D.

Del. Oct. 4, 2004).

## STATEMENT OF THE CASE

### A.    Procedural History

On or about August 1, 2006, Mark Daley filed a proof of claim for $869,996 in Calpine's

chapter 11 reorganization.  Calpine filed an objection to the claim on August 22, 2007.  Mr.

Daley filed a response on September 19, 2007.  Calpine filed a reply on January 24, 2008 and, on

March 7, 2008, Mr. Daley filed a supplemental affidavit and memorandum of law.

On March 12, 2008, the Honorable Burton R. Lifland of the United States Bankruptcy

Court for the Southern District of New York held a hearing, before any discovery was

conducted, and treated Calpine's objection to the claim as a motion to dismiss for failure to state

a claim upon which relief can be granted.   At the conclusion of the hearing, the court granted

Calpine's motion and disallowed Mr. Daley's claim.   Later that day, the court issued the

Decision.

On March 21, 2008, Mr. Daley filed a Notice of Appeal.

### B.    Statement of Facts

#### 1.    Calpine Corporation

By 2005, Calpine was operating the largest fleet of natural gas-fired power plants in

North America, supplying about 3.5% of the electricity consumed in the United States.  *Doc. #5,

Debtors' Motion for an Order Authorizing Payment of Certain Prepetition Property Tax Claims*

*at 2.*  One of the Calpine's business units was the Marketing and Sales ("M&S") group.  *Doc. #1,*

*Proof of Claim by Mark Daley, attached Calpine Marketing & Sales 2003 Incentive Plan  at § I.*

       2.    **Calpine's incentive plan for its Marketing & Sales group**

In 2003, Calpine established a new incentive plan for its M&S group.  One of the primary

purposes of the Plan was to recognize and reward successful employees, by providing them with

individual bonuses that would be paid from a pool of funds created each year (the "Plan" or

"MSIP").  *Doc. #1, Plan, §§ I, II, III, X.*   Funding the bonus pool had two basic components, as

set forth in Section IX of the Plan: (i) a threshold, monetary performance goal for the M&S

group and (ii) "ethical" criteria the M&S group and its employees had to satisfy.

> Funding of the MSIP bonus pool is subject to the prior approval of
> the Compensation Committee of the Board of Directors of the
> Company.  The initial consideration in determining whether to
> recommend to the Compensation Committee to fund the MSIP
> bonus pool will be an evaluation of M&S as an organization in
> light of the Company's overriding principles of ethical conduct and
> integrity.  It is expected that each M&S employee will conduct
> Calpine's business in an open and honest fashion, and that the
> actions and decisions undertaken by M&S will represent the
> Company with honor and distinction in the face of public scrutiny.
> The Office of the Chairman, in its sole discretion, will determine
> whether or not to recommend funding of the MSIP bonus on the
> basis of these guiding principles.
>
> M&S must achieve a consolidated adjusted MtS value of three
> times its actual overhead expenses before the bonus pool will be
> considered for funding.  After the goal of three times the adjusted
> MtS value has been achieved, the plan will fund at 4% of the total
> adjusted MtS value minus overhead and MIP and MSIP bonus
> accruals, plus any additional CSC dollars ….

*Doc. #1, Plan § IX.*

"[B]efore the bonus pool will be considered for funding," the M&S group first had to

achieve the monetary performance goal, as set forth in the second paragraph of Section IX. *Id.*  If

this goal was met, Calpine's Chairman, in his "sole discretion," would evaluate the M&S group

based upon the following "guiding principles" of the company: "It is expected that each M&S employee will conduct Calpine's business in an open and honest fashion, and that the actions and decisions undertaken by M&S will represent the Company with honor and distinction in the face of public scrutiny." *Id.*

Consideration of the ethical criteria would determine "whether or not [the Chairman would] recommend funding of the bonus pool." *Id.* Funding of the bonus pool was also subject to approval of the Board's Compensation Committee. *Id.*

Individual bonuses would be determined by each employee's performance and "awarded by the Senior Vice President of M&S," provided the employee was still employed by Calpine. *See Doc. #1, Plan, §§ X, XIII.* The bonus checks would be distributed following the close of the calendar year and usually paid in March. *See id. at § XI.*

The actual distribution and payout of bonuses were subject to "the sole discretion of Company management." *Id. at § XV.* In addition, management could revise or rescind the Plan at any time. *Id.* The President and CEO were given "broad authority to interpret the Plan;" however, the decision to fund the bonus pool was expressly reserved for the Compensation Committee. *Id. at § XIV.*

### 3. Mr. Daley's extraordinary performance in 2005

Mr. Daley has been employed by Calpine in the M&S group for seven years, selling energy output from Calpine's natural gas plants in the Southeast. *Doc. #10, Daley Affidavit, ¶ 4.* His compensation package has always included a base salary and bonus, which is standard in the industry. He received a bonus from Calpine for his performance every year except 2005. *Id. at ¶ 6.*

In 2005, Mr. Daley had an extraordinary year.  He closed two of the M&S group's most profitable deals and accounted for over $66 million of the $137 million in "mark-to-swap" value created by the group.  *Id. at ¶ 20.* As a result of this extraordinary performance, Mr. Daley's direct boss, Vice-President Tim Eves, recommended he receive the maximum bonus under the Plan.  *Id. at ¶ 21.*  In addition, Mr. Daley was told he would receive the "Chairman's Award" that Calpine gives out annually to a select group of employees.  *Id. at ¶ 31.*

### 4.    <u>Calpine's sufficient cash reserves after its chapter 11 filing</u>

On December 20, 2005 (the "Petition Date"), Calpine filed one of the ten largest bankruptcy reorganizations in history, with more than $26 billion in assets, a net worth in excess of $4 billion and plenty of cash on hand.  *Doc. #16, Memorandum of Law by Mark Daley at 7.*

On the Petition Date, Calpine filed a motion for authorization to pay $25 million in pre-petition property tax claims.  *Doc. #2, Debtors' Motion for an Order Authorizing Payment of Certain Prepetition Property Tax Claims.*  The purpose of this motion was to save the interest expense that would accrue on these claims.  *Id. at ¶¶ 29, 31.*  Calpine not only had "sufficient cash reserves" to pay these claims but also sought a $2 billion debtor in possession credit facility that would provide additional cash to satisfy some of these claims.  *Id. at ¶ 34.*

On the Petition Date, Calpine also filed a motion for authorization to pay $8 million in other, pre-petition taxes that represented "only a very small fraction – in fact, less than 0.04% – of the Debtors' total consolidated assets . . . ."  *Doc. #3, Debtors' Motion for an Order Authorizing Payment of Prepetition Sales, Use and Franchise Taxes at ¶ 25.*

### 5.    The President of Calpine Energy Services told Mr. Daley <u>2005 bonuses will be paid</u>

In January 2006, shortly after Calpine's bankruptcy filing, Paul Posoli, the President of Calpine Energy Services, told Mr. Daley and other employees that everyone with a "formulaic"

bonus plan who met the "benchmarks" would receive their expected bonus. *Doc. #10, Daley Affidavit, ¶ 21.*   This meant to Mr. Daley that that his bonus would be paid. *Id. at ¶¶ 21-23* ("Accordingly, there was no doubt in my mind that I would be receiving the maximum bonus possible for 2005.").

In addition, in March 2006, Kenneth Derr, Calpine's Chairman, told a group of M&S employees that their 2005 bonuses would be paid. *Doc. #17, Supplemental Daley Affidavit, ¶ 3.* Calpine's attorneys also told certain M&S employees, around the same time, that they were "99% sure" the 2005 bonuses would be approved by the Bankruptcy Court. *Id.*

Calpine apparently made all of the necessary calculations to compute the funding for the 2005 bonus pool. *Doc. #10, Daley Affidavit, ¶ 24 & Exhibit C.*   In addition, Mr. Daley's performance was also analyzed. *Id. at ¶ 24; see Doc. #1, attached MSIP 2005 Calculations.*  Mr. Daley's bonus should have equaled or exceeded the "soft cap" of 200% of his base salary. *Id. at ¶ 24; see Doc. #1, Plan, §X.*

### 6. Calpine's CEO later sent Mr. Daley a form letter stating 2005 bonuses will n*ot* be paid

In April 2006, Calpine's CEO, Bob May, sent Mr. Daley a form letter stating that the company had decided "to not pay bonuses for 2005 performance:

> In 2005, we clearly did not achieve our corporate goals.  Our significant losses, coupled with the financial realities of operating in bankruptcy, have resulted in the decision to not pay bonuses for 2005 performance.

*Doc. #10, Daley Affidavit, Exhibit D, Letter from Bob May dated April 7, 2006 at p. 2.*  The letter also described a new incentive program that would replace the Plan. *Id. at p.1.*

7.    **Mr. Daley's Claim**

Thereafter, Mr. Daley filed a proof of claim for his 2005 bonus in the sum of $869,996 (the "Claim").  *Doc. #1.*

8.    **Calpine's successful reorganization**

Calpine's reorganization has been a tremendous success.  On December 19, 2007, the Bankruptcy Court confirmed Calpine's fourth amended plan of reorganization, and unsecured creditors are expected to receive at least 97% of their allowed claims.  *Doc. #16, Memorandum of Law by Mark Daley at 9.*  In addition, the company reduced $7.2 billion in debt and obtained a $7.3 billion exit financing facility.  *Id. at 10.*

Gregory L. Doody, Calpine's General Counsel and Chief Restructuring Officer, described Calpine's "remarkable" restructuring:

> Calpine's restructuring was truly remarkable. In just over two years Calpine dramatically improved its capital structure, reducing approximately $7.2 billion in debt while generating a significant recovery for our creditors as a whole. In addition, we enhanced and streamlined our core power generation business. Together, these financial and operating improvements have laid a strong foundation for the future success of Calpine, its stakeholders, customers and employees.

*Id. at 9-10.*  In addition, Calpine's CEO described Calpine's accomplishment as follows:

> This is a wonderful day for all of us at the new Calpine.  We are very proud of what we have been able to accomplish over the past two years. Calpine is now a stronger, more competitive power company poised for growth in the energy industry. We are well positioned for future success, with a healthy balance sheet and a $7.3 billion exit financing facility.

*Id. at 9.*

Notably, Calpine's CEO and Chief Restructuring Officer received "emergence awards" of $10 million and $2 million, respectively and, in addition, the bankruptcy lawyers and other

professionals retained by Calpine and the creditors committee received approximately $400 million. *See Doc. #16, Memorandum of Law by Mark Daley at 10; Doc. #15, Notice of Hearing on Applications of Professionals for Allowance of Eighth and Final Interim Compensation for Services Rendered and for Reimbursement of Actual and Necessary Expenses.*

**9.    <u>Calpine's objection to the Claim</u>**

Four months before Calpine's plan of reorganization was confirmed and more than one year after the Claim was filed, Calpine filed an objection to the Claim, contending that Mr. Daley's bonus "was not earned, authorized, or approved." *Doc. #8, Debtor's Twentieth Omnibus Objection; Doc. #9, Affidavit of Craig Chancellor in Support of Debtors' Twentieth Omnibus Objection to Proofs of Claim, ¶ 8.*

Mr. Daley filed an affidavit and other papers in response to the objection.    In his affidavit, Mr. Daley described his expectations and reliance upon the Plan as follows:

> I relied upon the Plan and it was a strong motivating factor for me to work hard to close valuable power supply contracts for Calpine, knowing that it would undoubtedly result in a large bonus.  Had I known that I would receive no bonus for 2005, I would have quit and found another job.

*Doc. #10, Daley Affidavit, ¶31.*  Mr. Daley also pointed out that the Plan had not been revised or rescinded until <u>after</u> his bonus became due. *Id.*  Accordingly, Mr. Daley claimed that Calpine breached the Plan and the implied covenant of good faith and fair dealing. *Doc. #11, Daley's Response at ¶¶ 27-36.*

Calpine then filed a reply acknowledging that Mr. Daley met the criteria for a bonus:

> The Plan was structured to create a pool of funds for individual bonuses, provided certain criteria were met.  For purposes of this motion, Calpine does not dispute that Daley met those criteria.

*Doc. #13, Debtor's Reply at 3.*  Calpine also stated that "management had proposed partially funding the bonus pool" but that, after consultation with the Creditors' Committee, the company "decided not to recommend that the Compensation Committee fund the bonus pool" for the following reasons:

> Recognizing the need for court approval of any decision to fund the bonus pool, Calpine's management weighed the decision taking into account the Creditors' Committee's objections to management's proposal, Calpine's 2005 performance, and the Chapter 11 Cases and the procedural and financial implications of those cases.

*Id. at 4.*

According to Calpine, the Plan's grant of "sole discretion" gave the company "absolute" and "unrestricted discretion" over decisions by (i) the chairman to recommend or not recommend funding the bonus pool; (ii) the Compensation Committee to authorize or not authorize funding, and (iii) Calpine's management to distribute and payout all bonus amounts.  *Id. at 5, 9.*

Calpine also argued that the company complied with the implied covenant of good faith and fair dealing because "various dynamic factors" were taken into account:

> Foremost among these [dynamic factors] was the fact that Calpine was operating as a debtor in a Chapter 11 Bankruptcy proceeding. This meant that Calpine was financially constrained, and a decision to initiate the funding of a bonus pool just months after the company entered Bankruptcy required the input and approval of various constituencies.   Indeed, Calpine's management initially approached the Creditors' Committee about funding the bonus pool, and the Creditors' Committee objected.  Taking into account Calpine's 2005 performance (the company had clearly failed to meet its corporate goals), the implications of operating in Bankruptcy, and competing funding requests that it would be bringing before the Court for approval Calpine decided not to recommend that the Compensation Committee fund the bonus pool.

*Id. at 10* (citation omitted).

Mr. Daley then filed a supplemental affidavit and a memorandum of law, raising the following legal arguments in support of the Claim: (1) Calpine breached the plain and unambiguous language of Section IX; (2) Calpine breached the implied covenant of good faith and fair dealing; (3) the Claim should be allowed based upon the doctrine of promissory estoppel; (4) the Claim should be allowed based upon the doctrine of estoppel by conduct; and (5) Calpine will be unjustly enriched if the Claim is not allowed. *Doc. #16, Memorandum of Law at 13-28.*

Mr. Daley also argued that discovery was needed to address disputed issues of fact raised by Calpine's papers. *Doc. #16, Memorandum of Law at 12, n.10* ("For example, a fact finder could conclude there were no real financial constraints preventing the Debtors from funding the 2005 bonus pool.").

### 10.    The Bankruptcy Court's Decision

On March 12, 2008, the Bankruptcy Court held a hearing on Calpine's objection to the Claim, treating it as a Rule 12(b)(6) motion to dismiss, and issued a ruling from the bench disallowing the Claim "for lack of legal sufficiency." *Tr. at 9:6-7; 24:25-25:2.* Later that day, the court issued the Decision.

Judge Lifland concluded that the Plan "provides Calpine <u>unrestricted</u> <u>discretion</u> regarding the decision to fund – or not fund – the bonus pool and to pay – or not pay – bonus compensation." *Doc. #18, Decision at 4* (emphasis added). The court held that Mr. Daley's claim was "legally insufficient" and disallowed the claim. *Doc. #18, Decision at 5.*

### SUMMARY OF ARGUMENT

Mr. Daley has established a claim for breach of contract. Calpine violated the plain and unambiguous language of the Plan, the contract between the parties. The Chairman failed to

exercise his discretion under Section IX and recommend funding of the 2005 bonus pool. Calpine's management usurped the Chairman's discretionary power and arbitrarily substituted new factors for the criteria set forth in Section IX. The Bankruptcy Court erred in concluding that the Plan provided Calpine "unrestricted discretion" regarding the decisions whether to fund the bonus pool and how the funds are distributed. The Bankruptcy Court failed to accept Mr. Daley's factual allegations as true and draw all reasonable inferences in his favor, as required on a Rule 12(b)(6) motion to dismiss. Accordingly, the Bankruptcy Court's holding that the Claim was "legally insufficient" was an abuse of discretion.

Calpine also violated the covenant of good faith and fair dealing implied in all contracts which is particularly applicable in the present case where Calpine had discretionary power under the Plan affecting Mr. Daley's rights. Calpine's conduct frustrated Mr. Daley's reasonable expectations under the Plan. Mr. Daley had an extraordinary year in 2005 and his direct boss recommended that he receive the maximum bonus under the Plan. While Calpine could revise or rescind the Plan at any time, Calpine could not change the criteria for funding the 2005 bonus pool or rescind the Plan and refuse to pay Mr. Daley's 2005 bonus <u>after</u> the year had ended and all the criteria for funding and payment had been met.

Mr. Daley is also entitled to an allowed claim based upon the doctrine of promissory estoppel. In January 2006, Calpine promised Mr. Daley that performance bonuses for 2005 would be paid. Mr. Daley then remained with Calpine, as required by the Plan for his bonus to be paid, and was injured when he did not receive his 2005 bonus. Accordingly, Calpine's promise should be enforced and Mr. Daly's claim should be allowed to avoid injustice.

## ARGUMENT

## POINT I

## THE BANKRUPTCY COURT'S HOLDING THAT THE CLAIM WAS LEGALLY INSUFFICIENT WAS AN ABUSE OF DISCRETION BECAUSE CALPINE BREACHED THE PLAN

The Bankruptcy Court's holding that the Claim was "legally insufficient" was an abuse of discretion. Calpine violated the plain and unambiguous language of the Plan and, therefore, Mr. Daley should have an allowed claim based upon a breach of contract. At the very least, had the court applied the proper legal standard for a Rule 12(b)(6) motion to dismiss, it could not have disallowed the Claim summarily. The Court's conclusion that the Plan provided Calpine unrestricted discretion regarding the decisions whether to fund the 2005 bonus pool and to pay the employees' bonus compensation was plain error.

At the March 12th hearing and in the Decision, Calpine's objection to the Claim was treated as a Rule 12(b)(6) motion to dismiss. *See Tr. at 9:13-15; 10:6-7; 14:19-15:3; 25:25-26:2; Doc. #18, Decision at 5; see also Doc. #13, Debtor's Reply at 2, 3* ("For purposes of this response, the well-pled allegations can be taken as true and the facts underlying this particular claim are largely undisputed."). *See, e.g., In re Metiom, Inc.*, 301 B.R. 634, 639-40 (Bankr. S.D.N.Y. 2003) (response to claim objection treated as a Rule 12(b)(6) motion to dismiss, as incorporated by Bankruptcy Rule 7012(b)(6)); *see generally* Fed. R. Bankr. P. 9014(c) (the bankruptcy court may direct that other rules in Part VII of the Bankruptcy Rules shall apply in a contested matter); Fed. R. Civ. P. 12(b)(6), incorporated by Fed. R. Bankr. P. 7012.

A Rule 12(b)(6) motion to dismiss a claim should not be granted if the claim has been adequately supported by factual allegations. *See ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir. 2001); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998); *A.J. Heel*

*Stone, L.L.C. v. Evisu Int'l, S.R.L.*, 2006 U.S. Dist. LEXIS 34152 at *7-8 (S.D.N.Y. May 25, 2006) (Batts, J.); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) ("[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). The court "must accept the [factual] allegations contained therein as true and draw all reasonable inferences therefrom in favor of the [claimant]." *Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms.*, 298 F.3d 136, 140 (2d Cir. 2002); *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir. 1995). The court's task "is merely to assess the legal feasibility of the [claim], not to assay the weight of the evidence which might be offered in support thereof." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2002) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774,779 (2d Cir. 1984)). A court's review of motion to dismiss is limited and "the issue is not whether [the claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).

In support of his claim that Calpine breached the Plan, Mr. Daley contends that the Plan did not provide Calpine unrestricted discretion regarding the decisions whether to fund the 2005 bonus pool and how the funds are distributed.[2] The Bankruptcy Court ignored the plain and unambiguous language of the Plan which showed a clear distinction between the discretionary power of the Chairman to determine whether to recommend funding of the bonus pool together with the role of the Compensation Committee in the funding process, as governed by Section IX, and the discretionary power given to Calpine's management under Section XV with respect to the actual payout and distribution of bonuses.

---

[2] There is no dispute that the Plan is a contract between the parties governed by California law and that, at least for purposes of Calpine's motion to dismiss, Mr. Daley met all of the criteria for his 2005 bonus. *Doc. #13, Debtor's Reply at 3.*

According to Mr. Daley, Section IX of the Plan governed issues relating to funding of the bonus pool each year. The discretionary power of the Chairman whether to recommend funding was limited to specific non-monetary criteria and subject only to approval of the Compensation Committee. Calpine's management had no role in the funding process, as shown by Section XIV. The discretionary power given to Calpine's management under Section XV, with respect to the actual distribution and payout of bonuses checks, is separate and distinct from both the bonus pool funding process and the process of determining and awarding individual bonuses. *See Doc. #1, Plan, § XI* ("Bonus checks are underlined_distributed following the close of the calendar year and are usually paid in March of the following year.") (emphasis added).

The court ignored the distinction between the funding process described in Section IX, the process for determining and awarding individual bonuses described in Sections X and XIII, and the process for distributing and paying bonus checks described in Sections XI and XV. Instead, the court lumped all of the sections of the Plan together and erroneously concluded the "Plan provides Calpine unrestricted discretion." *Doc. #18, Decision at 4.* Had the court viewed Section IX separately and distinctly from Section XV, the court would have had to conclude that Calpine breached the Plan because the Chairman failed to exercise his discretionary power under Section IX after the M&S group met both the monetary and non-monetary criteria.

Mr. Daley also contended that Calpine breached the Plan when management usurped the Chairman's discretionary power and arbitrarily substituted new "dynamic factors"[3] for the explicit criteria set forth in Section IX. *See Doc. #13, Debtor's Reply at 10* ("Calpine's management initially approached the Creditors' Committee about funding the bonus pool, and

---

[3] Calpine's claim that it was "financially constrained" to recommend funding of the bonus pool is highly suspect. The company had tens of millions of dollars to pay pre-petition taxes, simply to save the interest expense, and Calpine was seeking a $2 billion debtor in possession credit facility. Yet, funding the Plan would have required less than $5 million. *Doc. #10, Daley's Affidavit, Exhibit C (1).*

the Creditors' Committee objected. . . . Calpine decided not to recommend that the Compensation Committee fund the bonus pool.").

Had the Bankruptcy Court accepted Mr. Daley's contentions as true and drawn all reasonable inferences in his favor, the court could not have found the Claim to be legally insufficient.

### POINT II

### THE BANKRUPTCY COURT'S HOLDING THAT THE CLAIM WAS LEGALLY INSUFFICIENT WAS AN ABUSE OF DISCRETION BECAUSE CALPINE BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The Bankruptcy Court's holding that the Claim was legally insufficient was an abuse of discretion because Calpine breached the implied covenant of good faith and fair dealing.

Calpine was required to act in good faith and in accordance with fair dealing when exercising its discretion under the Plan because the covenant of good faith and fair dealing is implied in all contracts.  *See Carma Developers California Inc. v. Marathon Development California, Inc.,* 826 P.2d 710, 726 (Cal. 1992); *Love v. Fire Ins. Exchange,* 271 Cal. Rptr. 246, 256 (Cal. Ct. App. 1990).   As the *Love* court stated:

> In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.

271 Cal. Rptr. at 256.

Under the covenant of good faith and fair dealing, Calpine had a duty not to destroy or injure Mr. Daley's rights to receive the benefits of the Plan.  *See Kendall v. Pestana,* 709 P.2d 837, 844 (Cal. 1985) ("[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . .") (quoting

*Universal Sales Corp. v. Cal. Mfg. Co.*, 128 P.2d 665, 677 (Cal. 1942)).  Calpine could not exercise its discretion arbitrarily or in bad faith in disregard of the purpose of the Plan to reward successful employees, such as Mr. Daley, and Mr. Daley's legitimate expectation that his 2005 bonus would be paid.  *See Racine & Laramie, Ltd., Inc. v. Val. Dep't of Parks Recreation*, 124 Cal. Rptr. 2d 335, 340 (Cal. Ct. App. 1992); *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1112 n.18 (Cal. 2000) ("The covenant [of good faith and fair dealing] prevents a party from acting in bad faith to frustrate the contract's *actual* benefits."); *McCollum v. XCare.net, Inc.*, 212 F. Supp. 2d 1142, 1152 (N.D. Cal. 2002) ("[I]f one party exercises its discretionary authority in bad faith for the purpose of frustrating the other party's legitimate expectations, it has breached the implied covenant.").

The covenant of good faith and fair dealing is particularly applicable in the present case because Calpine was given discretionary power under the Plan affecting Mr. Daley's rights.  *See McCollum*, 212 F. Supp. 2d at 1153 ("California law is clear, however, that 'where a contract confers one party with discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing.") (citation omitted); *Carma Developers California Inc.,* 826 P.2d at 726 ("The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another"); *Kendall***,** 709 P.2d at 844 ("a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing."), (quoting *Cal Lettuce Growers v. Union Sugar Co.*, 289 P.2d 785, 791 (Cal. 1955)) (en banc); *Mission Ins. Group, Inc. v. Merco Construction Engineers, Inc.,*  195 Cal. Rptr. 781, 784 (Cal. Ct. App. 1983).  As the Court of Appeal of California stated: "The days of 'unfettered' discretion, if ever they existed, are no more." *Mission Ins. Group, Inc.,* 195 Cal. Rptr. at 784.

Calpine acted in bad faith when the Chairman failed to recommend funding of the 2005 bonus pool. All of the criteria under Section IX for the Chairman to exercise his discretion and recommend funding had been met: the M&S group achieved its financial performance goal for 2005 and satisfied Calpine's "guiding principles." Calpine also acted in bad faith by allowing its management to usurp the discretionary powers of the Chairman and the Compensation Committee regarding the funding of the bonus pool. There is no provision in the Plan that authorized Calpine's management to exercise such authority. In fact, Section XIV reserved the decision regarding funding to the Committee. Calpine's arbitrary substitution of new "dynamic factors" for the explicit criteria set forth in Section IX, after the year ended and Mr. Daley earned his 2005 performance bonus, was likewise in bad faith. While Calpine could revise or rescind the Plan at any time, it was unfair for Calpine to do that after the year ended and Mr. Daley earned his 2005 performance bonus. *See* Cal. Civ. Code § 1648 (2007) ("However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract"). As the court stated in *Asmus v. Pacific Bell:*

> [A]n unqualified right to modify or terminate the contract is not enforceable. But the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice.

999 P.2d 71, 79 (Cal. 2000). Calpine's conduct frustrated Mr. Daley's legitimate expectations under the Plan. "It never occurred to me that Calpine could change the criteria for funding the bonus pool after I earned my bonus, particularly after the extraordinary year I had in 2005. It would be like moving the goal line back after the team scored a touchdown." *Doc. #17, Supplemental Daley Affidavit, ¶ 5.*

Calpine's conduct was in disregard of a primary purpose of the Plan which was to reward successful employees in the M&S group who created value for the company. Calpine also disregarded Mr. Daley's interest under the Plan. The Plan's bonus potential was a significant part of Mr. Daley's regular compensation. It also was a strong motivating factor for Mr. Daley to work hard and close valuable power supply contracts for Calpine because Mr. Daley knew "that it would undoubtedly result in a large bonus." *Doc. #10, Daley Affidavit at ¶ 31.*

The Bankruptcy Court's conclusion that "unrestricted discretion" justified Calpine's conduct was an abuse of discretion. *Doc. #18, Decision at 4.* As shown above, the Plan did not give Calpine unrestricted discretion. In addition, the Bankruptcy Court erroneously found that Mr. Daley was using the implied covenant of good faith and fair dealing to undercut "the clear language" in the Plan giving Calpine "sole discretion" whether to fund the Plan and the right to "revise or rescind the plan at any time." *Doc. #18, Decision at 2.* However, as shown above, Mr. Daley is only using the implied covenant of good faith and fair dealing to enforce the provisions of the Plan; he is not proposing to change any terms of the Plan. In construing the Plan, the Bankruptcy Court ignored the purposes of the Plan and Mr. Daley's legitimate expectations and interest. This was an abuse of discretion.

Any reliance on *Brandt v. Lockheed Missiles & Space Co.*, 201 Cal. Rptr. 746, 748 (Cal. Ct. App. 1984) to support a conclusion that Calpine had unrestricted discretion under the Plan would be misplaced. *Brandt* involved different contract language,[4] and the patent plan at issue in that case was not part of the employees' regular compensation. *See Kelly v. Skytel Communications Inc.*, No. 00-17089, 2002 WL 46163, at *9, n.1 (9th Cir. Feb. 25, 2002). In *Kelly,* the court held that the employer's compensation agreement, when read as a whole, did not

---

[4] The pertinent language in the Patent Plan provided: "[the Invention Awards Committee] may, but is not obligated to, grant to the inventor-employee a Special Invention Award . . . ." *Brandt*, 201 Cal. Rptr. 746, at 748 (emphasis added).

give it unlimited discretion in awarding commissions and, therefore, concluded that the employee proffered enough evidence to survive a motion for summary judgment on claims for breach of contract brought pursuant to the implied covenant of good faith and fair dealing. *Id. at 8, 13-14*. Here, the Plan is similar to the incentive compensation agreement in *Kelly* which "include[d] both a base salary and eligibility for monthly commissions," *Id. at *5,* as opposed to the patent plan in *Brandt*.

Accordingly, Calpine breached the implied covenant of good faith and fair dealing.

<u>**POINT III**</u>

**THE BANKRUPTCY COURT'S HOLDING THAT THE DOCTRINE OF PROMISSORY ESTOPPEL WAS <u>UNAVAILING WAS AN ABUSE OF DISCRETION</u>**

The Bankruptcy Court's holding that the doctrine of promissory estoppel was unavailing to Mr. Daley was an abuse of discretion. The court ignored Calpine's repeated promises outside the Plan, after its bankruptcy filing, that 2005 performance bonuses would be paid, failed to analyze the doctrine and dismissed Mr. Daley's argument in a single sentence. *Doc. #18, Decision at 5.*

Mr. Daley's claim should be allowed based upon the doctrine of promissory estoppel because all of the necessary elements are satisfied in the present case. The doctrine of promissory estoppel has three basic elements: (1) a promise; (2) reasonable reliance; and (3) injury. *Div. of Labor Law Enforcement v. Transpacific Trans. Co.*, 137 Cal. Rptr. 855, 860 (Cal. Ct. App. 1977).

The first element is satisfied by the promise made when the President of Calpine Energy Services, in January 2006, told Mr. Daley that everyone with a "formulaic" plan who met their benchmarks would receive their expected bonus. *Doc. #10, Daley Affidavit at ¶ 21.* In March

2006, Calpine's Chairman also told other employees in the M&S group that 2005 performance bonuses would be paid and these assurances were echoed by the company's lawyers. *Doc. #17, Daley Supplemental Affidavit at ¶ 3.*

Mr. Daley "relied upon the Plan" which required him to remain "employed on the day bonus checks are awarded," *Doc. #10, Daley Affidavit at ¶ 31;Doc. #1, Plan, § XIII,* and it is undisputed Mr. Daley stayed with the company past the date his 2005 bonus should have been paid. According, the second element was satisfied.

Mr. Daley was injured when he did not receive his 2005 bonus even though he remained employed by Calpine past the date the bonus should have been paid. Thus, the third element is satisfied. Accordingly, Calpine's promise should be enforced and Mr. Daley's claim allowed to avoid injustice. *J. W. Van Hook v. Southern California Waiters Alliance, Local 17*, 323 P.2d 212, 220-21 (Ct. App. Cal. 1958); *see also Div. of Labor Law Enforcement*, 137 Cal. Rptr. at 859 ("[an employer] is bound when he should reasonably expect a substantial change of position (act or forbearance) in reliance on his promise if injustice can be avoided only by the enforcement of the promise.").

A review of the Decision shows that the Bankruptcy Court ignored the factual and legal issues implicated by Mr. Daley's argument that his claim should be allowed based upon the doctrine of promissory estoppel. This was an abuse of discretion.

## CONCLUSION

For the reasons set forth above, this Court should reverse the Bankruptcy Court's decision and grant Mr. Daley an allowed claim, while remanding the matter to the Bankruptcy Court solely to determine the amount of the claim. Alternatively, the entire matter should be remanded to the Bankruptcy Court so that Mr. Daley may conduct discovery and offer evidence

to support his claim.

Dated:  New York, New York                    Wander & Associates, P.C.
        May 28, 2008


                                              By:  /s/ David H. Wander
                                                   David H. Wander (DHW#0145)
                                              641 Lexington Avenue, 21st Floor
                                              New York, NY  10022
                                              (212) 751-9700

                                              *Attorneys for Appellant Mark Daley*

**WANDER & ASSOCIATES, P.C.**

Attorneys for Appellant Mark Daley
641 Lexington Avenue, 21st Floor
New York, New York 10022
(212) 751-9700
David H. Wander (DHW#0145)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| In re: | Chapter 11 |
| CALPINE CORPORATION, et al., | Case No. 05-60200 (BRL) |
|                Reorganized Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| MARK DALEY, | |
|                Appellant, | Case No. 1:08-cv-3880 (DAB) |
|     v. | ECF Case |
| CALPINE CORPORATION, et al., | |
|                Appellees. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK   }
                       }ss.:
COUNTY OF NEW YORK  }

<u>**CERTIFICATION OF SERVICE BY ECF**</u>

      Steven I. Super, under the penalty of perjury, certifies the following:

      I am not a party to this proceeding, over 18 years of age and reside in New York, New York.  On May 28, 2008, I served the Appellant Mark Daley's Brief in Support of his Appeal, via the Electronic Case Files system and email.

                                        _____
                                        Steven I. Super

# SERVICE LIST

Anthony Casey, Esq. (by email)
KIRKLAND & ELLIS, LLP
153 East 53rd Street
New York, NY 10022-4611

Mark S. Lillie, Esq. (by email)
KIRKLAND & ELLIS, LLP
200 East Randolph Drive
Chicago, IL 60601