**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 1:08-cv-3880 (DAB) |
| Calpine Corporation, <u>et al.</u>, | ECF Case |
| Debtors. | |
| Mark Daley, | Chapter 11 |
| Appellant, | |
| v. | Case No. 05-60200 (BRL) |
| Calpine Corporation, <u>et al.</u>, | |
| Appellees. | |

**BRIEF OF APPELLEES**

KIRKLAND & ELLIS LLP
Edward O. Sassower (ES 5823)
David R. Seligman
Mark S. Lillie (admitted *pro hac vice*)
Anthony J. Casey (admitted *pro hac vice*)
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ............................................................................................................. 1

JURISDICTION OF THIS COURT .............................................................................. 2

STATEMENT OF ISSUES ON APPEAL ...................................................................... 3

STANDARD OF REVIEW ............................................................................................. 3

STATEMENT OF THE CASE ...................................................................................... 3

       A.    Statement of Facts ..................................................................... 3

       B.    Procedural History .................................................................... 5

       C.    Summary of Argument ............................................................. 6

ARGUMENT ................................................................................................................... 8

    I.     THE BANKRUPTCY COURT CORRECTLY HELD THAT, AS A
MATTER OF LAW, THE PLAIN AND UNAMBIGUOUS LANGUAGE
IN THE PLAN VESTS CALPINE WITH THE SOLE DISCRETION TO
FUND, APPROVE, AND PAYOUT INCENTIVE BONUSES ............................ 8

    II.    THE BANKRUPTCY COURT CORRECTLY HELD THAT, AS A
MATTER OF LAW, AN IMPLIED COVENANT OF GOOD FAITH
AND FAIR DEALING CANNOT CHANGE THE EXPRESS TERMS
OF THE PLAN. ................................................................................................ 11

    III.   THE BANKRUPTCY COURT PROPERLY HELD THAT
PROMISSORY ESTOPPEL DOES NOT APPLY. .......................................... 15

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asmus v. Pacific Bell,*
    999 P.2d 71 (Cal. 2000) ................................................................................... 10

*Brandt v. Lockheed Missiles & Space Co.,*
    154 Cal. App. 3d 1124 (1st Dist. 1984) ................................................... passim

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.,*
    2 Cal. 4th 342 (1992) ..................................................................................... 11

*Gerdlund v. Electronic Dispensers International,*
    190 Cal. App. 3d 263 (6th Dist. 1987) ........................................................... 12

*Guz v. Bechtel National, Inc.,*
    24 Cal. 4th 317 (2000) ................................................................................... 11

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.,*
    41 Cal. App. 4th 1410 (2nd Dist. 1996) ................................................. 15, 16

*In re Integrated Resources, Inc.,*
    147 B.R. 650 (S.D.N.Y. 1992) ......................................................................... 3

*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority,*
    23 Cal. 4th 305 (2000) ................................................................................... 15

*Kelly v. Skytel Communications, Inc.,*
    32 Fed. Appx. 283, No. 00-17089, 2002 WL 461363, *1 (9th Cir. Feb. 25, 2002) 12, 13, 14

*Lamke v. Sunstate Equipment Co.,*
    387 F. Supp. 2d 1044 (N.D. Cal. 2004) ......................................................... 11

*Law Debenture Trust Co. of New York v. Calpine Corp.,*
    356 B.R. 585 (S.D.N.Y. 2007) ......................................................................... 3

*MBNA America Bank, N.A. v. Hill,*
    436 F.3d 104 (2d Cir. 2006) ............................................................................. 3

*Paracor Finance, Inc. v. General Electric Capital Corporation,*
    96 F.3d 1151 (9th Cir. 1996) ......................................................................... 15

**Page(s)**

*Racine & Laramie, Ltd., Inc. v. Cal. Department of Parks and Recreation,*
    11 Cal. App. 4th 1026 (4th Dist. 1992) ............................................................................12

*Tollefson v. Roman Catholic Bishop,*
    219 Cal. App. 3d 843 (4th Dist. 1990) ..........................................................................12

*Total Coverage, Inc. v. Cendant Settlement Services Group, Inc.,*
    252 Fed. Appx. 123, No. 05-55521, 2007 WL 1982136, \*2 (9th Cir. Jul. 3, 2007) .........15

*Wal-Noon Corp. v. Hill,*
    45 Cal. App. 3d 605 (3rd Dist. 1975) ...........................................................................16

**Statutes**

California Civil Code § 1638.............................................................................................8

**Rules**

Federal Rules of Civil Procedure 12(b)(6) .......................................................................5

## INTRODUCTION

Appellees Reorganized Calpine Debtors ("Calpine") file this opposition to Appellant Mark Daley's ("Daley") opening brief on appeal, and respectfully state as follows:

Daley is before this Court on appeal arguing that the Bankruptcy Court (Judge Lifland) erred in finding that his claim regarding a 2005 incentive bonus was legally deficient.   Daley based this claim on the Calpine Marketing and Sales 2003 Incentive Plan (the "Plan").  *Doc. #1, Proof of Claim by Mark Daley, attaching Calpine Marketing and Sales 2003 Incentive Plan.* Because the claim finds no support in the Plan or any other principle of applicable law, it must fail as a matter of law and therefore the decision by the Bankruptcy Court should be affirmed.

The decision not to award incentive bonuses for 2005—which applied equally to all employees and not just Daley—was made pursuant to the express language of the Plan and it must be upheld under the principle that unambiguous contract provisions shall control the interpretation and enforcement of a written contract.  The Plan's terms clearly vest Calpine— through the Compensation Committee, the Office of the Chairman, and Management—with the sole discretion to fund or not fund its bonus pool and to decide whether to pay bonuses.  In its exercise of that discretion and in compliance with the terms of the Plan, Calpine decided not to pay bonuses after it filed for Chapter 11 protection.

Moreover, Daley's argument that Calpine's exercise of its discretion breached an implied covenant of good faith and fair dealing is legally unsupportable under California law.[1]  While California law recognizes implied-covenant claims in some circumstances, California courts, including its Supreme Court, have made clear that an implied covenant cannot alter the express

---

[1]   The parties agree that, under the terms of the Plan, California law governs this dispute. *Doc. #1, Plan, § XVII.*

terms of a contract. Indeed, a California Court of Appeals has rejected the precise implied-covenant claim that Daley attempts to bring here. *Brandt v. Lockheed Missiles & Space Co.*, 154 Cal. App. 3d 1124, 1130 (1st Dist. 1984). That court—considering a discretionary incentive-compensation provision like the one in the Plan here—reaffirmed the rule that an implied covenant cannot override an express grant of discretion and concluded that, where a party conformed with the language of a contract, "it may not reasonably be said that in doing so it violated 'a duty of good faith and fair dealing.'" *Id.*

Thus, in ignoring the Plan's explicit discretionary provisions, Daley argues precisely what California law prohibits. If his implied-covenant argument is entertained, the covenant would rewrite the express language of the Plan that places key incentive-compensation decisions in Calpine's "sole discretion."

Similarly, Daley's argument that promissory estoppel should be applied to invalidate Calpine's decision must fail. Under California law, equitable remedies do not apply when express terms of a contract bind the parties. Thus, promissory estoppel cannot be invoked to imply terms that do not exist into the Plan or imply a contract that does not exist.

Because Calpine acted consistently with its expressly-granted *sole* discretion, and because neither an implied covenant nor the doctrine of promissory estoppel can be invoked to override or alter the unambiguous terms of the Plan, the Bankruptcy Court's Order to disallow Daley's claim should be affirmed.

## JURISDICTION OF THIS COURT

Calpine does not dispute the jurisdiction of this Court.

2

## STATEMENT OF ISSUES ON APPEAL

Whether the Bankruptcy Court correctly held that, as a matter of law, the plain and unambiguous language in the Plan vests Calpine with the sole discretion to fund, approve, and pay out incentive bonuses.

Whether the Bankruptcy Court correctly held that, as a matter of law, an implied covenant of good faith and fair dealing could not alter the express terms of the Plan.

Whether the Bankruptcy Court correctly held that, as a matter of law, promissory estoppel could not apply to Daley's claims because there was a contract with plain language that would be contradicted by application of that doctrine.

## STANDARD OF REVIEW

Contrary to Daley's assertions, this appeal only presents issues of law. The Bankruptcy Court held that Daley's claims *were insufficient as a matter of law* based on the plain language of the contract and the clear law of California requiring the enforcement of that language. *Tr. at 24:25-25:6.* Those legal conclusions are reviewed *de novo. Law Debenture Trust Co. of New York v. Calpine Corp.*, 356 B.R. 585, 594 (S.D.N.Y. 2007) (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006)).

Even if Daley were correct, and the Bankruptcy Court's rejection of his equitable arguments involved an exercise of discretion, a bankruptcy court has "substantial freedom to tailor his [or her] orders to meet different circumstances" when exercising equitable authority. *Id.* (citing *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992)).

## STATEMENT OF THE CASE

### A.    Statement of Facts

It is undisputed that the decision to pay or not pay bonuses for performance in 2005 was controlled by the Plan. The Plan expressly stipulated that funding of the bonus pool was subject

3

to the prior approval of the Compensation Committee of the Board of Directors and

recommendation of the Office of the Chairman:

> Funding the MSIP [Marketing & Sales Incentive Plan] bonus pool
> is *subject to the prior approval of the Compensation Committee* of
> the Board of Directors of the Company. The *initial* consideration
> in determining whether to recommend to the Compensation
> Committee to fund the MSIP bonus pool will be an evaluation of
> M&S [Marketing & Sales] as an organization in light of the
> Company's overriding principles of ethical conduct and integrity.
> . . . The Office of the Chairman, *in its sole discretion,* will
> determine whether or not to recommend funding of the MSIP
> bonus on the basis of these guiding principles.

*Doc. #1, Plan, § IX* (emphasis added).  The Plan further provided that even if funded, the actual

distribution of such funds was a decision placed in the sole discretion of Company management:

> Distribution and payout of all MSIP bonus amounts are at the *sole
> discretion of Company management.*  The Company reserves the
> right to revise or rescind the plan at any time.

*Doc. #1, Plan, § XV* (emphasis added).

Pursuant to this express grant of discretion, Calpine determined that it would be

inappropriate to recommend that the Compensation Committee fund the bonus pool given the

company's financial distress.  As a result, the Office of the Chairman did not recommend

funding the bonus pool, the pool was not funded, and no bonuses were paid under the plan.

Calpine's Chief Executive Officer informed employees of this decision in an April 7, 2006 letter

noting that Calpine's "significant losses, coupled with the financial realities of operating in

bankruptcy, have resulted in the decision not to pay bonuses for 2005 performance." *Doc. #10,

Daley Affidavit, ¶ 25.*  Notably, that bonus decision affected all employees and Daley was treated

the same as all other employees: no bonuses were paid out for 2005 performance.  The letter also

informed employees that Calpine was seeking court approval to implement a new Calpine

Incentive Plan (the "New Plan") replacing the Plan.  The New Plan was approved by the

Bankruptcy Court on May 15, 2006. *Doc. # 21, 5/15/2006 Order Authorizing Implementation of the Calpine Incentive Program.* Under the New Plan, Daley received a mid-year bonus in 2006. *Tr. at 24:20-24.*

## B.    Procedural History

On August 1, 2006, Mark Daley filed a proof of claim for $869,996 in Calpine's Chapter 11 reorganization. *Doc. #1, Proof of Claim by Mark Daley.* Calpine filed an objection to the claim on August 22, 2007. *Doc. # 8, Debtors' Twentieth Omnibus Objection to Proofs of Claim.* Daley filed a response on September 19, 2007. *Doc. # 11, Response to Debtor's 20th Omnibus Claim Objection by Mark Daley.* Calpine filed a reply on January 24, 2008. *Doc. # 13, Debtors' Reply in Support of the Debtors' Twentieth Omnibus Objection to Proofs of Claim.* On March 7, 2008, Daley filed a supplemental affidavit and memorandum of law. *Doc. # 16, Memorandum of Law by Mark Daley; Doc. # 17, Supplemental Affidavit by Mark Daley.*

On March 12, 2008, after full briefing, the Honorable Burton R. Lifland of the United States Bankruptcy Court for the Southern District of New York heard the parties' arguments to test the legal sufficiency of Daley's claim. Calpine's objection to Daley's claim was treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Tr. at 8:13-22, 9:2-7, 25:24-25:6.* At the hearing, the Bankruptcy Court granted Calpine's motion to disallow Daley's claim. *Tr. at 24:25-25:6.* A copy of the transcript of that hearing is attached hereto as Exhibit A.

Later that same day, the Bankruptcy Court issued a Memorandum Decision and Order ("Order") setting forth the basis for its holding. *Doc. # 18, Order.* A copy of that Order is attached hereto as Exhibit B. The Bankruptcy Court concluded that Calpine's decision to not pay bonuses for the year 2005 was expressly permitted by the Plan and sustained Calpine's objection to Daley's claim on that ground. *Doc. # 18, Order at 4.* The Bankruptcy Court further

found that an implied covenant of good faith and fair dealing could not be read into the Plan to change the Plan's express terms and prohibit Calpine from doing that which is plainly permitted by the agreement. *Doc. # 18, Order at 3.* Finally, the Bankruptcy Court determined that Daley's promissory estoppel arguments were unavailing, and did not apply because there were no promises or representations in the Plan guaranteeing that a bonus would be paid by Calpine. *Doc. # 18, Order at 5.* As the Court aptly summarized the matter, "this is a plain language case, and [ ] the plain language is clear that [Daley's] claim should be dismissed or stricken for lack of legal sufficiency." *Tr. at 24:14-17*

On March 21, 2008, Daley filed a Notice of Appeal, *Doc. # 19*, and on May 28, 2008, he filed an Appellant's Brief in Support of Appeal Pursuant to Bankruptcy Rule 8009 in this Court (*Dkt. # 11*).

### C.    Summary of Argument

Despite the clear language of the Plan and the Bankruptcy Court's correct application of law requiring the enforcement of that language, Daley argues that the Bankruptcy Court's holding was an abuse of discretion. This attempt to undermine the Bankruptcy Court's reasoning is unavailing. The Plan's express terms are clear, and those terms grant sole discretion, as the Bankruptcy Court found, (i) to the Office of the Chairman to recommend or not recommend funding of the bonus pool, (ii) to the Compensation Committee to authorize or not authorize funding, and (iii) to management to distribute and payout or not distribute and payout all bonus amounts. *Doc. # 1, Plan, §§ IX, XV.*

Because these discretion-granting provisions are clear and unambiguous, they must be enforced as written. Daley tries to escape the grants of discretion by arguing that the contract includes "criteria" that render bonuses mandatory. This argument also ignores the contract

6

language which identifies the so-called criteria as only an "initial consideration" and nowhere states that bonuses must be paid if they are met. It also ignores the fact that the "initial consideration" is only part of the decision to *recommend* funding the pool, and not part of the decision to actually fund the pool (which is subject to approval by the Compensation Committee) nor the actual payment of bonuses to employees (which is subject to the sole discretion of Management). Daley also argues that the sole discretion of the Office of the Chairman was usurped and somehow abused because the decision not to recommend funding was made in conjunction with Calpine's management in light of dynamic factors facing a company that was in bankruptcy. This argument is simply wrong— clearly the inclusion of management's insights and the review of all relevant factors is part of the prudent exercise of discretion.

Daley argues that even with the express terms of the Plan, an implied covenant of good faith and fair dealing must be invoked here to invalidate Calpine's decision and grant Daley his claim. California law is crystal clear, however, when it holds that an implied covenant of good faith cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement. Given this precedent, it is indisputable that Daley cannot rewrite the terms of the Plan to restrict Calpine's discretion.

Finally, Daley contends that the doctrine of promissory estoppel applies here to invalidate Calpine's decision not to pay performance bonuses for 2005. As the Bankruptcy Court found, this argument is equally meritless. Given the unambiguous language of the Plan, Daley cannot use equitable remedies to try to imply terms in the Plan or to imply a contract that does not exist. A promissory estoppel argument cannot, under California law, be used to rewrite the terms of a contract. Therefore, Daley's argument again must fail.

For these reasons, Calpine respectfully requests that this Court affirm the Bankruptcy Court's Order dismissing Daley's claim as legally insufficient and granting Calpine's motion to disallow the claim.

## ARGUMENT

**I.    THE BANKRUPTCY COURT CORRECTLY HELD THAT, AS A MATTER OF LAW, THE PLAIN AND UNAMBIGUOUS LANGUAGE IN THE PLAN VESTS CALPINE WITH THE SOLE DISCRETION TO FUND, APPROVE, AND PAYOUT INCENTIVE BONUSES.**

The plain and unambiguous language of the Plan vests Calpine with clear and unrestricted discretion to pay or not pay incentive bonuses. The Bankruptcy Court properly read the Plan by its terms and ruled that Calpine's decision to not pay bonuses for the year 2005 was expressly permitted by the Plan. *Doc. # 18, Order at 4.* The Bankruptcy Court sustained Calpine's objection to Daley's Claim on that ground, and that decision should be affirmed.

Courts must effectuate the plain language of an unambiguous contract. *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit. . ."); *Brandt*, 154 Cal. App. 3d at 1129-30 (rejecting an implied-covenant bonus claim because "[f]ew principles of our law are better settled, than that [the] language of a contract is to govern its interpretation, if the language is clear and explicit") (internal quotations and citations omitted).

The language of the Plan makes clear that funding of the bonus pool is subject to "prior approval" of the Compensation Committee of the Board of Directors, and that the decision to recommend such approval shall be a separate step left to the "sole discretion" of the Office of the Chairman. *Doc. # 1, Plan, § IX.* Even where the Compensation Committee and the Office of the Chairman do fund the bonus pool, the Plan goes on to place "sole discretion" with Company management over the next step of whether bonuses will be paid out of that pool. *Doc. # 1, Plan,*

*§ XV.*   Thus, the Plan expressly grants sole discretion (i) to the Office of Chairman to recommend or not recommend funding the bonus pool, (ii) to the Compensation Committee to authorize or not authorize funding, and (iii) to management to distribute and payout or not distribute and payout all bonus amounts.

Daley never argues that the language of the Plan is ambiguous; rather he argues that the Plan was breached when the Office of the Chairman failed to recommend funding the pool after the M&S group met both the monetary and non-monetary "criteria" set forth in § IX. *Appellant's Br. at 16.*[2]  But the "criteria" that Daley mentions are only "initial considerations" in the decision to recommend or not recommend funding the bonus pool.  They are not benchmarks that, if met, require funding—or even a recommendation of funding—the bonus pool.   The second sentence of § IX plainly states that the "initial consideration in determining whether to recommend to the Compensation Committee to fund the MSIP bonus pool will be an evaluation of M&S [marketing and sales] as an organization in light of the Company's overriding principles of ethical conduct and integrity."  But nothing in the Plan states that this consideration trumps the ultimate discretion granted in the Plan.  This initial consideration is, therefore, simply one factor that will be considered in the decision on recommending funding of the bonus pool.

Daley's argument that by meeting certain "criteria" he was entitled to a bonus also ignores the plain fact that even where the Office of the Chairman recommends funding the bonus

---

[2]  For the limited purpose of the standard that was before the Bankruptcy Court and is now before this Court on appeal, Calpine does not dispute whether the so-called "criteria" were met.  Calpine does not unqualifiedly agree that Daley has met all of the criteria for the 2005 incentive bonus.  But in order to remain faithful to the standard that was before the Bankruptcy Court, Calpine has assumed all well-pled facts as true for the purposes of the motion below and this appeal on that motion.

pool, the Compensation Committee has to approve the funding, and then actual payment of the bonuses is still left to the sole discretion of Management.

Finally, Daley's contention that management usurped the Office of the Chairman's discretionary powers, *Appellant's Br. at 16,* is baseless, and again, ignores the plain language of the Plan. The Office of the Chairman, exercising its discretion, opted to not recommend funding the bonus pool. Daley suggests that this discretion was usurped and abused by pointing to the fact that management was involved in the decision and considered dynamic factors including the various constraints placed on a corporation that is operating in Bankruptcy. *Appellant's Br. at 11, 16.* But such considerations in no way detract from the propriety of the discretionary decision. Indeed, it is undisputed that Calpine was operating in Bankruptcy and laboring under all of the constraints associated therewith. One would expect that a proper exercise of discretion would include input from management and the consideration of dynamic factors including those constraints—especially where, as here, management ultimately has the sole discretion to decide whether to pay out any bonuses from the pool once it is funded.

As the Bankruptcy Court stated at the March 12, 2008 hearing, this is a plain language case, and that plain language is clear. *Tr. at 24:14-17.* The Plan expressly provided full discretion over bonus decisions to Calpine. *Doc. # 1, Plan, § XV.* The Bankruptcy Court's decision to enforce this language in the Plan should be upheld.[3]

---

[3] Daley's arguments regarding the right to revise or rescind the contract are misplaced, as are his citations to *Asmus v. Pacific Bell,* 999 P.2d 71, 79 (Cal. 2000). *Appellant's Br. at 19.* The dispute in this case surrounds Calpine's decision—pursuant to the express language of the Plan—not to pay bonuses for 2005 performance. This was not a revision of the Plan but an application of its express terms. Indeed, the later *court-approved* decision to replace the Plan with the New Plan was prospective and had no impact on the bonus Daley is seeking in this action.

## II. THE BANKRUPTCY COURT CORRECTLY HELD THAT, AS A MATTER OF LAW, AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CANNOT CHANGE THE EXPRESS TERMS OF THE PLAN.

The interpretation of an unambiguous contract should begin and end with the plain language of that contract. Daley's argument that an "implied covenant of good faith and fair dealing" must be invoked essentially rewrites the terms of §§ IX and XV of the Plan. While it also is true that California law recognizes a covenant of good faith and fair dealing in contracts, it is "universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992) (citations omitted). Indeed, the Supreme Court of California has stated that it is "aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms." *Id.* at 374; *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349-50 (2000) (holding that an implied covenant of good faith "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement").

California courts have determined that implied covenant claims, like Daley's here, add very little to a breach of contract claim because when an implied covenant claim "seeks to impose limits . . . beyond those to which the parties actually agreed, the claim is invalid." *Id.* at 352; *see also Lamke v. Sunstate Equip. Co.*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004) ("The central teaching of *Guz* is that in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract.") Furthermore, California law allows parties to opt out of the covenant of good faith and fair dealing when a contract, like the Calpine Plan here,

expressly confers unrestricted discretion on one party. *Kelly v. Skytel Communications, Inc.*, 32 Fed. Appx. 283, 285, No. 00-17089, 2002 WL 461363, *1 (9th Cir. Feb. 25, 2002).

If Daley's claim regarding Calpine's limited discretion is accepted, the express terms of §§ IX and XV would be overridden. Virtually every California court to consider an implied covenant claim has rejected this contention by ruling that an implied covenant of good faith and fair dealing cannot rewrite express contract terms. *See, e.g., Gerdlund v. Elec. Dispensers Int'l.*, 190 Cal. App. 3d 263, 277 (6th Dist. 1987) ("No obligation can be implied, however, which would result in the obliteration of a right expressly given under a written contract."); *Tollefson v. Roman Catholic Bishop*, 219 Cal. App. 3d 843, 854 (4th Dist. 1990) (explaining that the implied covenant of good faith "cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract" and "cannot be used to rewrite a contract to include provisions entirely foreign to and expressly negated by the original"); *Racine & Laramie, Ltd., Inc. v. Cal. Dep't of Parks and Recreation*, 11 Cal. App. 4th 1026, 1032 (4th Dist. 1992) ("[T]he implied covenant [of good faith and fair dealing] is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract."); *Kelly*, 32 Fed. Appx. 283, 285, No. 00-17089, 2002 WL 461363, *1 ("[W]hen a contract expressly confers unrestricted discretion on one party, courts may not imply a covenant of good faith and fair dealing to limit that party's discretion and contradict the contract's express terms.").

Further confirming that courts routinely deny implied-covenant claims like Daley's, a California appeals court expressly rejected an implied-covenant claim based on facts that are not materially distinguishable from the facts before this Court. In *Brandt*, the court considered claims brought by employees seeking bonus compensation under contract terms providing for a

"Special Invention Award." 154 Cal. App. 3d at 1130. The contract language, similar to the language in the Calpine Plan, stated that a committee "may, but is not obligated to, grant [to the inventor-employee] a Special Invention Award," and that the committee's decision on the matter "shall be final and conclusive." Nonetheless, the plaintiffs claimed, like Daley, that their employer breached an implied covenant of good faith by not paying out the award plaintiff expected. The court of appeals reiterated that the language of the contract controls the relationship between the parties and rejected plaintiffs' argument. The court further explained that the defendant "had fully respected the patent plan's language [and] it may not reasonably be said that in doing so it violated 'a duty of good faith and fair dealing.'" *Id.*

The analysis is identical for Daley's claims. The Plan placed the *sole* discretion over bonus payments with Calpine, and Calpine "fully respected" the Plan's language and grants of discretion. Daley cannot claim that by doing so, Calpine somehow violated a duty of good faith and fair dealing.

Despite the on-point analysis in *Brandt* and the long line of California cases analyzing implied covenant claims, Daley contends that the Court should look to the facts in *Kelly v. Skytel Communications, Inc.*, an unpublished opinion from the Ninth Circuit. 2002 WL 461363, *1 (9th Cir. Feb. 25, 2002); *Appellant's Brief 21*. Daley argues that his implied-covenant claim is especially applicable here because Calpine's discretionary power under the Plan was limited, like the company's discretion in *Kelly*. *Appellant's Br. at 18, 21*. The *Kelly* plan, however, is distinguishable from the Calpine Plan. In *Kelly*, the court was faced with an agreement that, read as a whole, "does not allow the company unlimited discretion in awarding over-the-maximum sales commissions." *Kelly*, 32 Fed. Appx. at 284, 2002 WL 46163, at *1. While the contract in *Kelly* contained some discretionary language (*e.g.*, "the Committee has the right to modify or

13

change the criteria" and "the Committee reserves the right to use other means to determine a suitable payout"), it did not expressly provide the employer, as the Calpine Plan does, with sole discretion over the payment of incentive compensation. *Id.* at 286, *2.

Indeed, the Ninth Circuit in *Kelly* distinguished *Kelly*'s facts from cases like this one where there is an express grant of absolute discretion, explaining that "when a contract *expressly confers unrestricted discretion* on one party, *courts may not imply a covenant of good faith and fair dealing to limit that party's discretion* and contradict the contract's express terms." *Id.* at 285, *1 (emphasis added). The Calpine Plan provides just such a grant of "unrestricted discretion." Whereas the *Kelly* plan limited the range of the exercise of discretion to decisions ensuring a "suitable" bonus, the Calpine Plan contains express reservations of "sole discretion" regarding the decision to fund (or not fund) the bonus pool and to pay (or not pay) a bonus. Thus, the *sole* discretion granted in the Calpine Plan is distinguishable from the *restricted* discretion granted in the plan in *Kelly*. Rather, it is the agreement in the *Brandt* case that is on all fours with the Calpine Plan. Therefore —just as in *Brandt*—the implied covenant of good faith and fair dealing is inapplicable to Calpine's decision not to fund the bonus pool or pay bonuses under the Plan for 2005 performance. *See Kelly*, 32 Fed. Appx. at 287, 2002 WL 461363, at *3 n.1 (distinguishing *Brandt* on the basis that the employer in *Brandt* "fully reserved" its discretion).

Accordingly, the covenant of good faith may not be read to prohibit a party from doing that which is expressly permitted by its contract and the Bankruptcy Court correctly held as much in granting Calpine's motion to disallow Daley's claim.

14

### III. THE BANKRUPTCY COURT PROPERLY HELD THAT PROMISSORY ESTOPPEL DOES NOT APPLY.

Daley's promissory estoppel argument, like his breach of contract and implied-covenant claims, must fail. Again the analysis should start and end with the plain language of the Plan. When there is an express provision in a contract, equitable remedies cannot be used to imply terms in the contract or to imply a contract that does not exist. *Total Coverage, Inc. v. Cendant Settlement Services Group, Inc.*, 252 Fed. Appx. 123, 125-26, No. 05-55521, 2007 WL 1982136, *2 (9th Cir. Jul. 3, 2007) (holding that an action in promissory estoppel did not lie when the parties' rights were expressly set out in the agreement at issue); *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (determining that, under California law, an action in quasi-contract could not survive when "an enforceable, binding agreement exists defining the rights of the parties.") (internal citations omitted); *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (2nd Dist. 1996) ("A *quantum meruit* analysis cannot supply 'missing' terms that are not missing.").

This rationale was explained in *Kajima/Ray Wilson v. L.A. County Metropolitan Transportation Authority,* where the Supreme Court of California explained that "[p]romissory estoppel was developed to do rough justice *when a party lacking contractual protection* relied on another's promise to its detriment." 23 Cal. 4th 305, 315 (2000) (emphasis added). Where a contract with plain terms does exist, the parties are not lacking contractual protection and such "rough justice" is unnecessary. Rather, courts can apply the exact justice of enforcing the contract as it was written.

Applying this standard, the Bankruptcy Court noted that the Plan was clear in its grant of sole discretion to Calpine and that it contained no representations or promises guaranteeing a bonus. *Doc. # 16 Order at 5; Doc # 1, Plan §§ IX. XV.* As such, Daley cannot succeed on a

15

promissory estoppel claim—or any other quasi-contractual claim. Indeed, Daley's promissory estoppel argument is nothing more than a second attempt to use equitable remedies to ignore the basic principles of contract law and rewrite the express terms of the Plan. The Bankruptcy Court correctly rejected this attack on plain language. *Hedging Concepts*, 41 Cal. App. 4th at 1419 ("Contractual terms regarding a subject are not implicitly missing when the parties have agreed on express terms regarding that subject."); *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (3rd Dist. 1975) ("'While a court of equity may exercise broad powers in applying equitable remedies, it may not create new substantive rights under the guise of doing equity.'") (citation omitted).

The Bankruptcy Court's rejection of Daley's promissory estoppel argument is therefore the correct application of California law.

## CONCLUSION

For the reasons set forth herein and presented to the Bankruptcy Court below, Calpine respectfully asks this Court to affirm the Bankruptcy Court's Order dismissing Daley's claim.

Dated: June 26, 2008
      New York, New York

Respectfully submitted,

/s/Anthony J. Casey
Edward O. Sassower (ES 5823)
David R. Seligman
Mark S. Lillie (admitted *pro hac vice*)
Anthony J. Casey (admitted *pro hac vice*)
Kirkland & Ellis LLP
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Counsel for the Appellees

16

## CERTIFICATE OF SERVICE

I, Marisa B. Miller, do hereby certify that I have this day filed the foregoing Brief of Appellees with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

David Wander, Esq.
Wander & Associates, P.C.
641 Lexington Avenue
New York, NY 10022
dwander@wanderlaw.com

A copy of same was sent to counsel for the Appellant via electronic mail and U.S. mail this 26th day of June, 2008.

/s/ Marisa B. Miller

# EXHIBIT A

1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   --------------------------------x

4       In the Matter of:

5                               Case No.
                                05-60200
6       CALPINE CORPORATION, et al.,

7                               Debtors.

8   --------------------------------x

9                       March 12, 2008
                        United States Custom House
10                      One Bowling Green
                        New York, New York 10004
11

12

13
                Hearing Pursuant to Kirkland and Ellis LLP
14
     Amended Notice of Agenda of Matters Scheduled for Hearing.
15

16

17

18
     B E F O R E:
19

20              HON. BURTON R. LIFLAND,

21                          U.S. Bankruptcy Judge

22

23

24

25

2

```
 1     A P P E A R A N C E S:

 2


 3

                KIRKLAND & ELLIS LLP
 4
        Attorneys for the Debtors,
 5                 Calpine Corporation, et al.
                   153 East 53rd Street
 6                 New York, New York 10022

 7         BY:    ALEXANDRA S. KELLY, ESQ.,

 8                MARK S. LILLIE, P.C.
           200 East Randolph Drive
 9                   Chicago, Illinois 60601

10


11

                WANDER & ASSOCIATES P.C.
12
                Attorneys for Mark Daley
13                641 Lexington Avenue
        New York, New York 10022
14
           BY:    DAVID H. WANDER, ESQ.
15

16

17

18

19

20

21

22

23

24

25
```

3

```
1    P R O C E E D I N G S:

2              MS. KELLY:  Good morning, your Honor.

3              THE COURT:  Good morning.

4              MS. KELLY:  Alexandra Kelly of Kirkland and

5    Ellis LLP on behalf of the reorganized Calpine debtors.

6              We have a very brief agenda for you today.

7    And unless the court has any questions, I'll move right

8    into the agenda.

9              THE COURT:  Go ahead.

10             MS. KELLY:  The first matter that we have

11   up for the court today is a notice of motion for

12   reconsideration of an order granting the debtors' 22nd

13   omnibus objection.  We had a stipulation of agreed order to

14   present to the court that resolves the issued raised in the

15   motion for reconsideration.

16             By way of background, just to give you a

17   short summary, Access Energy filed a timely proof of claim

18   arising out of a prepetition breach of contract lawsuit.

19   In our 22nd omnibus objection, we objected to that proof of

20   claim.  Access Energy did not file a response.  And in

21   October, I think the 25th, the court entered an order

22   approving the omnibus objection expunging the claim.

23             We later heard from Access Energy that they

24   did not receive proper notice of the objection.  And

25   although we dispute that, we determined that it was the
```

4

1    best course to agree to vacate the order and to reinstate

2    the proof of claim.  What the stipulation basically

3    provides for is that the proof of claim is reinstated and

4    that our objection to that proof of claim remains.  And the

5    hearing on that objection is now set for April 9th, 2008.

6                    And so we think this was the appropriate

7    resolution of the issues raised in the motion, and would

8    ask that the court approve it.  The stipulation and agreed

9    order are uncontested.

10                   THE COURT:  Does anyone want to be heard?

11                   The application for approval of the

12   stipulation is granted.

13                   MS. KELLY:  Would you like me to hand this

14   all up?

15                   THE COURT:  Is issue joined with respect to

16   the objection in any way?

17                   MS. KELLY:  I'm sorry?

18                   THE COURT:  Is issue joined in respect to

19   the objection in any way?

20                   MS. KELLY:  No.

21                   THE COURT:  You've had a omnibus objection,

22   correct?

23                   MS. KELLY:  No, they are not.  It was

24   purely --

25                   THE COURT:  So this date that you've agreed

5

1   upon is merely a holding date?

2                   MS. KELLY:  That's correct.

3                   THE COURT:  Very well.

4                   MS. KELLY:  And we may continue to adjourn

5   that to the extent that the parties are working to resolve

6   the outstanding objection to the claim.

7                   THE COURT:  Is Calpine Natural Gas a

8   debtor?

9                   MS. KELLY:  I believe they are.

10                  THE COURT:  Then wasn't the litigation in

11  Louisiana postpetition?

12                  MS. KELLY:  I'm not -- no, I believe this

13  is a prepetition claim.  They filed a general unsecured

14  claim arising I believe out of this.

15                  THE COURT:  Well, I see orders out of the

16  Louisiana court that's postpetition involving Access

17  against Calpine Natural Gas.

18                  MS. KELLY:  It was my understanding, your

19  Honor, that this was a prepetition claim.

20                  THE COURT:  Was it ever subject to a lift

21  stay motion?

22                  MS. KELLY:  I don't believe so.  But I --

23                  THE COURT:  I'll take the matters as they

24  develop.

25                  MS. KELLY:  Okay.  Thank you, your Honor.

6

```
1              The next matter that we have up are the
2     some of the remaining omnibus claims objections.  As has
3     been our prior practice, we filed a status report with the
4     court I believe yesterday detailing the status of the
5     versus omnibus objections that we continue to have pending.
6     And as set forth in that status report we basically state
7     which objections have been resolved, withdrawn or continued
8     to a later hearing date.
9              The omnibus objections covered by the
10    report are the 10th, the 11th, the 12th, the 13th, the
11    14th, the 15th, the 16th, the 17th, the 18th, the 20th, the
12    21st, the 22nd, the 24th, the 26th and the 27th.  We are
13    now totally complete with the 10th, the 15th and the 21st;
14    and we have orders to hand up to the court today that
15    relate to the 10th, the 11th, the 16th and the 27th.
16              THE COURT:  All consistent with the status
17    in connection with the listing here?
18              MS. KELLY:  That is correct, your Honor.
19              THE COURT:  Does anyone want to be heard?
20              The application is granted.  I'll entertain
21    the order when you are ready.
22              MS. KELLY:  We have one additional matter
23    that has been a small change to the agenda.  We had filed
24    an objection to the proof of claim of the California State
25    Board of Equalization.  It's listed on the agenda as
```

7

```
 1    adjourned because we didn't believe we were going to be
 2    able to resolve the matter, but as of last night we have
 3    been able to resolve it.  The State Board for Equalization
 4    is a state agency, and although the settlement that we
 5    reach with them otherwise would not need court approval
 6    because we are authorized to effectuate settlements such as
 7    this under the plan, they have requested that an order be
 8    entered just for their comfort.  So I do have that to hand
 9    up to the court today.
10              THE COURT:  Very well.  Of course you do
11    know that I have an ancient colleague who took the position
12    that we don't issue comfort orders.  It is so ordered.
13              MS. KELLY:  Understood.  May I hand these
14    up?
15              THE COURT:  Yes.
16              I've approved the orders.
17              MS. KELLY:  Thank you, your Honor.
18              The next matter on the agenda is contested,
19    it is the debtors' 20th omnibus objection, and that matter
20    is going to be handled by my colleague, Mark Lillie.
21              MR. LILLIE:  Good morning, your Honor.
22              THE COURT:  Good morning.
23              MR. LILLIE:  Mark Lillie on behalf of
24    Calpine.  And I've been advised to be brief, and I have
25    just a couple minutes worth of additional argument to
```

8

1    supplement our papers that are before your Honor.

2                    I'd like to address four things quickly.

3    The first is the procedural posture that brings us here on

4    the Daley claim.  The second thing is does the plain

5    language of the incentive plan permit the claim or not

6    permit the claim that is brought.  The third issue is

7    Daley's claims with the implied covenant of good faith and

8    fair dealing can be used to, in essence, override the terms

9    of the plan.  And the fourth filing is a little bit new.

10   In the filing that was submitted by Daley on Friday, they

11   raise some equitable issues in addition to the contract

12   claims.

13                   First, as to the procedural posture, the

14   briefing that's before the court may not suggest this, but

15   we are actually here simply on a motion to dismiss.  We are

16   here to test the legal sufficiency of the claim that's

17   brought and not to get into any of the merits of the claim.

18   I think this was discussed with your Honor about a month

19   ago at the discovery conference.  Your preference at that

20   time was, well, let's see if the claim can withstand legal

21   scrutiny at that point, and that's really all that we are

22   here on today.

23                   Daley's filing on Friday, your Honor, makes

24   the claims that, and I'm constrained to tell you this,

25   Daley's filing on Friday makes the claim that we have

9

1    somehow agreed that he has met all of the criteria for this

2    incentive bonus.  That's not correct.  What we said is

3    faithful to the standard before your Honor we assume all

4    well pled facts as true for purposes of this motion only.

5    So we are not going to get into all of the details of what

6    he did and what the details of the plan are, we simply

7    admit that for purposes of the 12(b)(6) type motion.

8                 The second point, your Honor, is does the

9    language in the plan mean what it says when it vests

10   Calpine with discretion to fund, to approve and pay out the

11   incentive bonuses.  We suggest that it should be read

12   plainly to permit what the company did.  Daley has a

13   different view.

14                 With your Honor's permission, I would like

15   to just hand you an excerpt from the plan that might

16   facilitate our discussion this morning.

17                 THE COURT:  Sure.

18                 (Handing)

19                 MS. KELLY:  Judge, the issue before you is

20   very simple.  We have pointed out in paragraphs nine and 15

21   of this plan that the company has discretion to approve, to

22   fund and to pay out the bonuses which he now claims.  We

23   are not contesting here today whether he meets all the

24   other criteria for that, the issue is do these vesting of

25   discretion with the company trump his claimed entitlement

10

1    to the bonus.

2              Plaintiff's brief goes into all sorts of

3    other criteria that may apply, but that's not really the

4    issue before the court.  The issue is, if you look at

5    paragraph nine, "Funding of the MSIP bonus pool is subject

6    to the prior approval of the compensation committee of

7    Board of Directors.  It's undisputed that that approval was

8    never granted.

9              Secondly, Daley makes the claim that

10   somehow the ethical admonitions that are in paragraph nine

11   are somehow the only guiding principles which decide

12   whether or not the company can make this decision.  That's

13   not correct.  What they don't focus on is in the second

14   sentence it states that the initial consideration in

15   determining whether to recommend to the compensation

16   committee to fund the bonus will be an evaluation of M and

17   S, marketing and sales, as an organization in light of the

18   company's overriding principles of ethical conduct and

19   integrity.

20             I think this gets to the point that your

21   Honor raised at the last conference which I wasn't at, and

22   that is these are simply types of criteria that may be

23   included but they don't trump what happens at the end; and

24   that is, the office of the chairman in its sole discretion

25   will determine whether or not to recommend funding of the

1    bonus on the basis of these guides principles.  And this is

2    consistent -- our reading of that is consistent with what

3    follows in paragraph ten.  In paragraph 10 it says, "many

4    factors are taken into consideration in determining an

5    individual employee's bonus."  That's exactly the point

6    that your Honor was making at the last conference.

7              And finally, with respect to paragraph 15,

8    this is a paragraph that gets virtually no attention in

9    Daley's response, but it is yet another clear indication of

10   the discretion, the entire and complete discretion that the

11   company has, and it's labeled Company Discretion:

12   "Distribution and payout of all MSIP bonus amounts are at

13   the sole discretion of the company management."

14             Your Honor, we say that the language is

15   plain and unambiguous in those three paragraphs.  Daley's

16   submission on Friday states repeatedly that they believe

17   that the language is clear and unambiguous, so the issue is

18   joined.  You need to make a determination under paragraphs

19   nine on and under paragraph 15 whether Calpine had the

20   discretion to not fund the bonus plan as we argue.

21             Just a couple of final points.  Daley is

22   now claiming that there is some restriction on the

23   company's exercise of discretion.  I don't find that

24   restriction anywhere in this document, rather the plain

25   language of the document gives no restrictions with respect

1    to Calpine's exercise and discretion.

2                And it's important, I think, to note that

3    it is undisputed that Daley has not been treated any

4    differently from any other employee.  No employee got the

5    2005 bonus underneath this plan, and that really ties into

6    my third point, which is the good faith and fair dealing

7    covenant.  The good faith and fair dealing concept that I'm

8    familiar with is really a tool of construction for

9    interpreting a contract claim.

10               What we have here is no need to fill in any

11   gaps.  There are no terms that are left unfilled.  There's

12   no discrimination being alleged here.  And so the reason

13   for using a covenant of good faith and fair dealing to

14   imply this kind of additional term isn't necessary here.

15   And in fact what we have here is if the you accept the

16   Daley's argument, it would be rewriting and overriding the

17   plain terms of paragraph nine and paragraph 15, to write

18   out of the plan the discretion that is express and

19   unconditional in the plan as written.  That is not an

20   appropriate time or an appropriate circumstance under which

21   to imply a term of good faith and fair dealing.

22               And finally, your Honor, in Friday's

23   submission plaintiffs made some reference to in the

24   alternative, arguing that there are estoppel issues here or

25   unjust enrichment.  Now those issues were not raised in the

1     first instance, but I don't think that they matter because

2     they don't apply.  These are equitable remedies that are

3     used in the absence of an express contract.  I think the

4     law is very clear that when you have, as we do here, an

5     express provision, you can't use these equitable remedies

6     to try to imply terms or imply a contract that doesn't

7     exist.

8                    And again, if you were to permit the

9     invocation of these equitable remedies, what it would be

10    doing is simply rewriting or writing out of the plan the

11    sole discretion language which has been made express in

12    paragraphs 9 and 15.

13                    So, your Honor, we would ask that the

14    objection be granted.  Thank you.

15                    MR. WANDER:  Good morning, your Honor.

16                    David Wander on behalf of Mark Daley, the

17    plaintiff.

18                    THE COURT:  Good morning, Mr. Wander.

19                    MR. WANDER:  Your Honor, the parties do

20    agree on one item, which is the procedural context in which

21    we are now before the court, which is a motion to dismiss

22    on the pleadings which would be governed by Rule 12 C of

23    the Federal Rules of Civil Procedure which while not

24    naturally made applicable to a contested matter under Rule

25    9014, this court does have the discretion under 9014 to

1     apply the other adversary procedural rules.  And we've all

2     agreed, and as your Honor has stated, we are here before

3     your Honor on a motion to dismiss on the pleadings.

4            Your Honor set forth the standards for this

5     type of motion in a case, I believe last year in one of the

6     Cross Media decisions by your Honor in the Joseph Meyers

7     unsecured trust administrator versus James Ellsworth, case

8     number 03-13901, adversary proceeding 05-02215.  Your Honor

9     issued a memorandum decision and order that denied the

10    defendant's motion for judgment on the pleadings.  And in

11    that case your Honor stated the applicable law that I think

12    we are all very familiar with.

13           The review in court must accept as true all

14    factual allegations in the complaint, or in this case I

15    submit in the proof of claim, and must view the pleadings

16    in the light most favorable to, and draw all reasonable

17    inferences in favor of the non moving parties.  A party is

18    entitled to judgment on the pleadings only if it has

19    established that no material issue of fact remains to be

20    resolved --

21           THE COURT:  Mr. Wander, as you indicated,

22    everybody seems to be agreed, although I don't necessarily

23    agree with the parties, as to your posture of this matter,

24    so you are outlining the framework.  Let's get to the

25    texture of the picture itself.

1          MR. WANDER:  Yes, your Honor.

2              There are at least six reasons why this

3     motion to dismiss on the pleading should be denied.  First,

4     the proof of claim in our papers has set forth a breach of

5     contract claim if the debtor's interpretation of Section 9

6     is not correct.  And I submit their contract interpretation

7     is very flawed.

8              They also, the claimant also has a breach

9     of contract claim if the chairman arbitrarily and unfairly

10    changed the criteria for the bonus pool.  As one court

11    stated, and we all agree in our papers that California law

12    applies, the days of unfettered discretion, if they ever

13    existed, are no more.  And we've cited on our brief a case,

14    Mission Insurance Group, Inc. v. Merco Construction

15    Engineers, and that's a 1983 case out of the California

16    courts.

17             Mr. Daley does not seek to invoke the

18    doctrine, the implied doctrine of good faith and fair

19    dealing to change anything in the incentive plan.  We do

20    invoke the doctrine to enforce it and to supplement the

21    intent of the parties.

22             Now, the debtor wants to take two words in

23    Section 9, which is two paragraphs and it's fairly lengthy,

24    and they want to focus on the two words that say "sole

25    discretion."  You can read two words in this section out of

16

1    the context of the sentence in which those words are in, in

2    the paragraph in which those words are in, and in the

3    section in which they are in.

4                    Now this section could be easily contrasted

5    to Section 15 where it just uses very simple words about

6    management's sole discretion.  That phrase is not in

7    Section 9.  Section 9 is not an unrestricted, unlimited

8    absolute grant of discretion; it's very limited.  It's very

9    restricted.  It specifically tells the chairman what he is

10   supposed to look at.

11                   First, before the chairman even gets to

12   exercise his discretion to determine whether to fund the

13   bonus pool, the marketing and sales group, of which Mr.

14   Daley is a member, has to meet certain financial criteria.

15   There's a performance goal for the group.  The group has to

16   have a market to swap value of at least the three times the

17   overhead of that group.  There's no issue that that

18   threshold goal was met.  And that's in the second paragraph

19   of this Section 9.  Having met that goal, the chairman then

20   has to determine whether or not to fund the pool.

21                   The first paragraph that we are now

22   focusing on sets forth nonmonetary criteria.  It tells the

23   chairman what to look at.  It says to the employees there

24   are certain guiding principles of this company that are

25   very important, and if you want your bonus you have to meet

17

1    them.  And we, Calpine, as a company, take ethical conduct

2    very seriously.  And in our papers we mentioned the reason,

3    one reason why we believe this is very serious for the

4    company, which was a scandal that arose in California where

5    there was an artificial energy crisis where traders were

6    manipulating the prices.

7                   So Calpine is saying in the paragraph that

8    tells the chairman what to look at, look at their ethical

9    conduct, their integrity, did they conduct our company's

10   business fairly, honestly, in the face of public scrutiny?

11   The chairman did not do that.  If he did, he would have

12   recommended to fund the bonus pool.

13                  The chairman hypothetically could have had

14   a situation where there could be one hundred employees in

15   the group and there was one bad apple who did something

16   wrong that year, and the chairman could have exercised his

17   discretion and said one bad apple, you are all penalized.

18   But in the absence of the bad apple, in the absence of any

19   indication that the marketing and sales group, both as an

20   organization and the individual employees, if they met the

21   company's ethical criteria in Section 9, then we submit

22   there would be no reason for the chairman not to recommend

23   funding of the bonus pool.

24                  So we have this multi step criteria.

25   First, the group has to meet the monetary goal of MTS three

18

1    times overhead, then the second step is they have to meet

2    the nonmonetary criteria, and then the chairman would

3    recommend the bonus pool.

4                    There are at least two more steps we never

5    got to.  We never got to the compensation committee

6    receiving a recommendation from the chairman to fund the

7    bonus pool, so that's not at issue.  And the management

8    never had the opportunity to exercise any discretion under

9    Section 15 regarding the distribution and payout of bonuses

10   because the chairman never recommended to fund the bonus

11   pool.

12                   We did address the points in our memorandum

13   of law why those two steps are not relevant because we

14   never got to them.  But even if they were relevant, there

15   is an implied covenant of good faith and fair dealing that

16   applies to every step.  Every step of the process has to be

17   fair.  The company cannot say we are going to pay everyone

18   else, every other creditor, but for some reason we are not

19   going to pay the marketing and sales group.  Counsel is

20   correct, Mr. Daley was not discriminated against

21   personally, his whole group was discriminated against.

22   There is absolutely no reason why Calpine --

23                   THE COURT:  He's the only member of the

24   group that filed a similar claim?

25                   MR. WANDER:  It's my understanding, yes,

1    your Honor.  And he had the biggest claim by far, and that

2    probably is a reason why other employees didn't pursue a

3    claim because it may not have made sense to have a lawyer's

4    fees given if their claim was 10, 20, 30, 50 thousand

5    dollars, your Honor.  Mr. Daley had the best year.  He was

6    given the chairman's award.

7            THE COURT:  You mean that 10, 20, 30, 50

8    thousand dollars is insignificant in the context of a case

9    that played out a very substantial distribution to

10    creditors?

11            MR. WANDER:  In the context of fighting

12    Kirkland and Ellis and the other professionals, yes, your

13    Honor.  My client easily has spent more money than --

14            THE COURT:  You have thousands and

15    thousands of proofs of claim filed here, and I've never

16    heard anybody say, well, I didn't file a proof of claim

17    because it's too much trouble to hire a lawyer.  Nobody

18    said you have to hire a lawyer.

19            MR. WANDER:  That's true.  And Mr. Daley

20    didn't.  He filed a proof of claim on his own.

21            THE COURT:  There you go.

22            MR. WANDER:  I don't frankly know why the

23    others didn't do it, I don't know.  I'm just saying to your

24    Honor that --

25            THE COURT:  Well you just did tell me you

1    do know, and your hypothesis is that it's a question of

2    lawyer's fee.  Now you are contradicting that and you're

3    saying, no, it's not really a question of lawyer's fees.

4    So any one of them could have filed a claim, the same as

5    Mr. Daley.

6                    MR. WANDER:  Yes, your Honor.

7                    THE COURT:  It's cheap, it's a signature,

8    it's a form that the government issues.

9                    MR. WANDER:  Yes.  Any of the --

10                    THE COURT:  But nobody else did.

11                    MR. WANDER:  Not that I'm aware of, your

12    Honor.

13                    THE COURT:  And they are all aware of where

14    they stood in the firmament, bonus pools and the like.

15                    MR. WANDER:  Yes, your Honor.  They were

16    all aware that they had been promised a bonus.  They were

17    all aware that the criteria had been met.  I don't know if

18    all of them though, were aware, but a lot of them were

19    aware Mr. Halocey, one of the senior executives of Calpine,

20    told them in January shortly after the bankruptcy filing

21    that the bonuses would be paid.

22                    I believe a lot of them were aware that the

23    chairman, who spoke to them directly in March of 2006, and

24    said the bonus pool would be funded.  Yes, a lot of them

25    were aware.  I do not know why they didn't file a proof of

1    claim.  I gave one suggestion.  My point is that the fact

2    that none of them filed a proof of claim doesn't mean they

3    weren't entitled to the claim, and it doesn't mean that Mr.

4    Daley is entitled to the claim.

5              Frankly, your Honor, I can't understand why

6    the debtor didn't voluntarily fund the bonus pool because

7    this issue of financial constraints is, I submit, a red

8    herring.  The debtor had many for every single thing,

9    including a first day motion to pay prepetition taxes to

10   save the interest expense.  One of those motions was a 25

11   million dollar motion, subsequently increased to 37

12   million, which means that -- and I believe the funding of

13   the bonus pool was approximately 5 million.  So that means

14   that the debtor decided to spend nine times more than they

15   needed to fund the bonus pool to save prepetition --

16             THE COURT:  There are many factors, Mr.

17   Wander, that militated for or against certain expenditures.

18   Among others are the oversight of the creditors' committee,

19   the ad hoc committee, and various other creditors who were

20   looking like hawks at the debtors' expenditures and

21   bringing to the court's attention tension the need or the

22   lack of need with respect to these expenditures.

23             So you are just hypothesizing now as to why

24   some things were funded and others were not.

25             MR. WANDER:  Correct, because the debtor --

22

1          THE COURT:  Why don't you get on to the

2     merits of your motion, because as I see it really this is a

3     plain language motion.

4          MR. WANDER:  I agree.  Well, I submit, your

5     Honor that the equitable factors also impact, but I'm

6     focusing on the plain language.

7          As I said, your Honor, the plain language

8     told the chairman what the criteria was for his discretion.

9     It was not like Section 15 where it just had one sentence

10    that said management, in its sole discretion, can decide

11    when to pay out and distribute the bonuses.  Section 9 is

12    completely different, it's detailed.  It tells the

13    criteria.

14          The debtors admit in their papers they did

15    not follow the criteria.  The debtors state that they had

16    other considerations they call it dynamic factors.  The

17    dynamic factors were not proper criteria for the chairman

18    to evaluate.  The chairman did not --

19          THE COURT:  I understand your position,

20    you've laid it out in your papers.  Do you have anything

21    else?

22          MR. WANDER:  That's it, your Honor.  Thank

23    you.

24          THE COURT:  Thank you.

25          MR. LILLIE:  Your Honor, I take exception

1    with the claim that paragraph 9 dictates the criteria for

2    the chairman to use.  It doesn't do that.  What it says

3    simply is that in the first instance, and I quote, "the

4    initial."

5                    THE COURT:  Initially, yes.

6                    MR. LILLIE:  Yes, the initial

7    consideration.

8                    THE COURT:  It's an inter alia statement.

9                    MR. LILLIE:  It is, your Honor, and that's

10   been supported and consistent with paragraph 10 which says

11   many factors are taken into consideration in determining an

12   individual employee's bonus, and it's consistent with

13   paragraph 15 which grants the second exercise of discretion

14   to the company in addressing whether or not to fund the

15   bone.

16                    Your Honor, unless you have any questions,

17   I have nothing further to add and we'll stand on our

18   papers.

19                    MR. WANDER:  Your Honor, I just want to

20   address that comment.

21                    THE COURT:  Sure.

22                    MR. WANDER:  For purposes of that motion

23   it's conceded that all of those factors have been met, the

24   factors referred to in Section 10, individual bonus

25   determination.  Those factors were met.  Mr. Daley was told

24

1   he would get his bonus.  The debtors admit for purposes of

2   this motion that he did meet that criteria.

3            So the only issue before the court is are

4   there no facts, no argument whatsoever that Mr. Daley can

5   make to show beyond a reasonable doubt that he has some

6   merit to his claim.  That's the standard, and I submit,

7   your Honor, the debtors cannot meet that standard for

8   purposes of a motion to dismiss on the pleadings.  Section

9   9, Section 15 are completely different, and Section 9 does

10   not give unfettered, unrestricted discretion to the

11   chairman or Calpine.

12            Thank you.

13            THE COURT:  Thank you.

14            Well as I indicated, this is a plain

15   language case, and that the plain language is clear that

16   the claim should be dismissed or stricken for lack of legal

17   sufficiency.

18            I do agree that that's exactly what I have

19   before me.  Reading all of the key paragraphs that are here

20   in connection with the plan which has been supplanted.  And

21   I note also that when the new plans went into effect that

22   the objector here did receive his income under the new

23   plan, which apparently was swallowed or accepted by all of

24   the other people who are similarly situated to Mr. Daley.

25            But in any event I'm granting the debtors'

25

```
1    motion to strike the claim, or if you want to call it a

2    motion to dismiss for lack of legal sufficiency.  I do

3    agree that that criteria has been met as well.  And I will

4    issue a memorandum this afternoon in that regard.  But the

5    motion to strike the claim mean most.  The objection motion

6    is granted in both respects.

7                    MR. WANDER:  Thank you.

8                    MR. LILLIE:  Thank you, Judge.

9                    MS. KELLY:  Your Honor, there's nothing

10   more on the agenda.

11                   THE COURT:  Thank you all.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

26

1                    C E R T I F I C A T E

2

3    STATE OF NEW YORK        }
                              }      ss.:
4    COUNTY OF WESTCHESTER    }

5

6              I, Denise Nowak, a Shorthand Reporter

7         and Notary Public within and for the State of

8         New York, do hereby certify:

9              That I reported the proceedings in the

10        within entitled matter, and that the within

11        transcript is a true record of such proceedings.

12             I further certify that I am not

13        related, by blood or marriage, to any of the

14        parties in this matter and that I am in no way

15        interested in the outcome of this matter.

16             IN WITNESS WHEREOF, I have hereunto

17        set my hand this _____ day of

18        _____, 2008.

19

20                     _____
                       DENISE NOWAK
21

22

23

24

25

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------
In re

      Calpine Corporation, et al.,

                Debtors.

                                     Chapter 11

                                     Case No. 05-60200 (BRL)
                                     Jointly Administered

-----------------------------------------------------------

### MEMORANDUM DECISION AND ORDER GRANTING DEBTORS' MOTION TO DISALLOW CLAIM FOR BONUS COMPENSATION

        Calpine Corporation (Calpine) and its affiliated debtors (collectively with Calpine, the "Debtors") move for an order disallowing the claim filed by Mark Daley, a Calpine salesman, for unpaid bonus compensation for 2005.  The claim is based on the Calpine Marketing and Sales 2003 Incentive Plan (the "MS Plan"), which vested Calpine with discretion to fund or not fund its bonus pool and to decide whether to pay bonuses.

        With respect to funding, the MS Plan expressly provided that

> Funding the [MS Plan] bonus pool is subject to the prior approval of the Compensation Committee of the Board of Directors of the Company. The initial consideration in determining whether to recommend to the Compensation Committee to fund the [MS Plan] bonus pool will be an evaluation of [Marketing & Sales] as an organization in light of the Company's overriding principles of ethical conduct and integrity.  It is expected that each [Marketing & Sales] employee will conduct Calpine's business in an open and honest fashion, and that the actions and decisions undertaken by [Marketing & Sales] will represent the Company with honor and distinction in the face of public scrutiny.  The Office of the Chairman, in its sole discretion, will determine whether or not to recommend funding of the [MS Plan] bonus on the basis of these guiding principles.

*See* MS Plan, § IX.  Funding the bonus pool was also based in part upon the financial performance of  Marketing & Sales, *see id.*

        With respect to individual bonus determinations, the MS Plan provided that

"[m]any factors are taken into consideration in determining an individual's bonus." *See* MS Plan,

§ X.

>  With respect to actual payment of bonuses, the Plan provided that
>
>  Distribution and payout of all [MS Plan] bonus amounts are at the **sole discretion** of
>  Company management. The Company reserves the right to revise or rescind the plan at
>  any time.

*See* MS Plan, § XV (emphasis added).

After Calpine commenced its chapter 11 cases and after consultation with the Creditors'

Committee, Calpine decided not to fund or pay any bonuses for 2005 performance under the MS

Plan and several other bonus plans given the company's financial distress.   No employee

including Mr. Daley moved before this Court at that time to compel the Debtors' to pay bonuses

under, or fund the MS Plan.  Calpine subsequently sought this Court's approval to implement a

new Calpine Incentive Plan (the "New Plan") replacing all of the previous bonus plans,

including the MS Plan.  The New Plan was approved by this Court on May 15, 2006.  Under the

New Plan, Mr. Daley received a mid-year bonus in 2006.

Daley argues that despite the clear language of the MS Plan giving Calpine the sole

discretion to fund the MS Plan and the right, *inter alia*, "to revise or rescind the plan at any

time," Calpine's exercise of its discretion breached an implied covenant of good faith and fair

dealing under California law.

**Discussion**

Every contract imposes upon each party a duty of good faith and fair dealing in its

performance and its enforcement. *Carma Developers (Cal.), Inc. v. Marathon Development*

2

*California, Inc.* 2 Cal. 4th 342, 371 (1992).[1]  Under traditional contract principles, the implied

covenant of good faith is read into contracts "in order to protect the express covenants or

promises of the contract, not to protect some general public policy interest not directly tied to the

contract's purpose." *Id.* at 373, *citing Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690

(1988); *see also Brandt v. Lockhead Missiles & Space Co.*, 154 Cal. App. 3d 1124, 1129-30

(Cal. Ct. App. 1984) (rejecting an implied-covenant bonus claim and explaining that few

principles of our law are better settled, than that the "language of a contract is to govern its

interpretation, if the language is clear and explicit").  Accordingly, the covenant of good faith

may not be read to prohibit a party from doing that which is expressly permitted by an

agreement.  As to acts and conduct authorized by the express provisions of the contract, no

covenant of good faith and fair dealing can be implied which forbids such acts and conduct "if

defendants were given the right to do what they did by the express provisions of the contract

there can be no breach." *VTR, Inc. Goodyear Tire & Rubber Co.*, 303 F. Supp. 773, 777-778

(S.D.N.Y. 1969); *see also Kelly v. Skytel Commc'ns Inc.*, 2002 WL 461363, *1 (9th Cir. Feb. 25,

2002) (explaining that "when a contract expressly confers unrestricted discretion on one party,

courts may not imply a covenant of good faith and fair dealing to limit that party's discretion and

contradict the contract's express terms"); *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349-50

(2000) (rejecting an implied-covenant claim for wrongful termination, and explaining that an

implied covenant of good  faith "cannot impose substantive duties or limits on the contracting

parties beyond those incorporated in the specific terms of their agreement."); *Racine & Laramie,*

*Ltd., Inc. v. Cal. Dep't of Parks and Recreation,* 11 Cal. App. 4th 1026, 1032 (Cal. Ct. App.

---

[1] The parties agree that California law governs this dispute.

3

1992) ("[T]he implied covenant [of good faith and fair dealings] is limited to assuring
compliance with the express terms of the contract, and cannot be extended to create obligations
not contemplated in the contract."); *Tollefson v. Roman Catholic Bishop*, 219 Cal. App. 3d 843,
854 (Cal. App. Ct. 1990) (explaining that the implied covenant of good faith "cannot be used to
imply an obligation which would completely obliterate a right expressly provided by a written
contract" and "cannot be used to rewrite a contract to include provisions entirely foreign to and
expressly negated by the original"); *Gerdlund v. Elec. Dispensers Int'l,* 190 Cal. App. 3d 263,
277-78 (Cal. Ct. App. 1987) ("No obligation can be implied ... which would result in the
obliteration of a right expressly given under a written contract.); *Brandt v. Lockheed Missiles &
Space Co., supra* at 1130.

Despite the language setting forth the ethical guidelines, the MS Plan provides Calpine
unrestricted discretion regarding the decision to fund - or not fund - the bonus pool and to pay -
or not pay - bonus compensation. Accordingly, Calpine's decision to not pay bonuses for the
year 2005 was expressly permitted by the MS Plan and Calpine's objection to the Claim is
sustained on that ground. *Seabury Constr. Corp. v. Jeffrey Chain Corp.,* 289 F.3d 63, 68 (2d
Cir.2002) (stating that courts must effectuate the plain language of an unambiguous contract);
*see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247 (3d Cir. 2007)
(stating that Courts interpret contract documents in accord with their plain language);
*MacDonald v Commissioner*, 1934 WL 5416 (B.T.A. April 13, 1934) ("The courts will not
disregard the plain language of a contract or interpolate something not contained in it. Here the
language used by the parties is clear and unambiguous, and cannot be ignored however plausible
the reasons advanced. The courts will not write contracts for the parties to them nor construe

4

them other than in accordance with the plain and literal meaning of the language used.").

Daley's new arguments that the claim should be allowed based upon the doctrines of promissory estoppel or estoppel by conduct or unjust enrichment are equally unavailing. The MS Plan is clear that award and payment of bonuses rested on the sole discretion of Calpine. Thus there were no promises or representations in the MS Plan guaranteeing that a bonus would be paid by Calpine and there is no dispute that Mr. Daley was paid his salary for the year 2005. The Claim is legally insufficient and accordingly, the Debtor's motion to disallow the Claim is granted.

IT IS SO ORDERED.

Dated:  New York, New York
        March 12, 2008

/s/ Burton R. Lifland_____
United States Bankruptcy Judge