UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re:                                                                  Chapter 11

CALPINE CORPORATION, et al.,                                            Case No. 05-60200 (BRL)

                Reorganized Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MARK DALEY,

                Appellant,                                    Case No. 1:08-cv-3880 (DAB)

      v.                                                               ECF Case

CALPINE CORPORATION, et al.,

                Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### APPELLANT'S REPLY BRIEF IN SUPPORT OF APPEAL
### PURSUANT TO BANKRUPTCY RULE 8009


                WANDER & ASSOCIATES, P.C.
                Attorneys for Appellant Mark Daley
                641 Lexington Avenue, 21st Floor
                New York, New York 10022
                (212) 751-9700


Of Counsel
David Wander, Esq.

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    APPELLEE'S ARGUMENT IS BASED UPON ALLEGEDLY AMBIGUOUS CONTRACT LANGUAGE IN THE PLAN .................................................................................................. 2

        A.  Appellee's Interpretation of the Term "initial consideration" in Section IX Creates an Ambiguity ........................................ 2

        B.  Appellee Interpretation of the Term "sole discretion" in Section IX Creates an Ambiguity ...................................................... 6

    II.   APPELLEE'S ARGUMENTS THAT THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND THE DOCTRINE OF PROMISSORY ESTOPPEL DO NOT APPLY ARE WITHOUT MERIT ............................................................. 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

*Page*

**Cases**

*ACL Technologies, Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 22 Cal. Rptr. 2d 206, 213 (Cal. Ct. App. 1993) .................................................................................. 8

*Brandt v. Lockheed Missiles & Space Co.*, 201 Cal. Rptr. 746, 748 (Cal. Ct. App. 1984) ........................................................................................................... 9

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 80 Cal. Rptr. 329, 349 (Cal. Ct. App. 1998) ........................................................................ 8

*Kelly v. Skytel Communications Inc.*, No. 00-17089, 2002 WL 46163, at *2-3 (9th Cir. Feb. 25, 2002) .................................................................................. 5, 6

*Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Cal. Ct. App. 1998) ............................. 4

*Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co, Inc.*, 442 P.2d 641, 644-45 (Cal. 1968) ................................................................................. 4

*Solis v. Kirkwood Resort Co.*, 114 Cal Rptr. 2d 365, 269 (Cal. Ct. App. 2001) .......................................................................................................................... 4, 5

*Southern Cal. Gas Co. v. Ventura Pipe Line Constr. Co.*, 309 P.2d 849, 852 (Cal. Ct. App. 1957) ............................................................................................. 3, 4

*Universal Sales Corp. v. Cal. Mfg. Co.*, 128 P.2d 665, 671 (Cal. 1942) ........................ 3

**Statutes**

Cal. Civ. Code § 1636 (2008) ............................................................................................ 3

Cal. Civ. Code § 1638 (2008) ............................................................................................ 3

Cal. Civ. Code § 1641 (2008) ............................................................................................ 8

Cal. Civ. Code § 1654 (2008) ............................................................................................ 5

*Restatement of Law (Second) Contracts* § 203(a) (1981) ................................................ 8

**Other**

*Ballantine's Law Dictionary* 1323 (3d ed. 1969) ............................................................. 6

*Black's Law Dictionary* 499 (8th ed. 2004) ...................................................................... 6

*Merriam-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/sole (last visited July 16, 2008) ............................................ 6

## APPELLANT'S REPLY BRIEF

Appellant Mark Daley, by his attorneys, Wander & Associates, P.C., submits this reply brief.

## PRELIMINARY STATEMENT

Appellee's contract interpretation must be rejected because it is based upon allegedly ambiguous contract language in the Plan. Moreover, Appellee failed to analyze the Plan[1] as a whole and reconcile the various contractual terms relating to the bonus pool funding and the bonus distribution and payout process. It also failed to effectuate the mutual intent of the parties as it existed when the Plan became effective.

Appellee's argument is based upon an alleged latent ambiguity in Section IX of the Plan relating to the term "initial consideration." Appellee contends that "initial consideration" implies the existence of other, relevant considerations outside of Section IX. However, these other considerations – "dynamic factors" and "input from management" – are not found anywhere in the Plan. Appellee has also created an ambiguity with respect to the term "sole discretion" in Section IX by erroneously equating "sole" with "unrestricted." Thus, notwithstanding Appellee's characterization of the relevant contract language as "unambiguous," Appellee's argument requires parol evidence. Accordingly, it was plain error for the Bankruptcy Court to dismiss Mr. Daley's claim on the pleadings.

Appellant's contract interpretation, on the other hand, is based upon the plain language in the Plan and reconciles all of its sections and terms to give effect to every part, with each clause helping to interpret the other. It is also consistent with the Plan's primary objectives to "reward value creation" and "drive employee behavior towards [Calpine's] overriding principles of ethical conduct and integrity . . . ." *Doc. #1, Plan, § I.*

---

[1] Capitalized terms shall have the same meaning given them in Appellant's Brief unless otherwise defined herein.

The Bankruptcy Court's dismissal of Mr. Daley's claim on the pleadings was an abuse of discretion. This Court should reverse the Bankruptcy Court and allow Mr. Daley's claim, while remanding the matter solely to determine the amount of the claim. Only if this Court finds Appellee's contract interpretation equally plausible as Appellant's contract interpretation, should the Court remand the matter to the Bankruptcy Court for parol evidence to be introduced regarding the validity of the claim. In any event, the lower court's ruling cannot stand.

## ARGUMENT

## POINT I

### APPELLEE'S ARGUMENT IS BASED UPON ALLEGEDLY AMBIGUOUS CONTRACT LANGUAGE IN THE PLAN

Notwithstanding Appellee's repeated use of the word "unambiguous" to describe the contract language upon which it relies, *see Appellee's Br. at 1, 6, 8*, Appellee's contract interpretation is based upon an alleged ambiguous contract. Appellee has found a latent ambiguity in Section IX of the Plan relating to the term "initial consideration." In addition, Appellee has created an ambiguity with respect to the term "sole discretion" which Appellee equates with "unrestricted discretion." Thus, Appellee's contract interpretation requires parol evidence if it is to be considered.

A. **Appellee's Interpretation of the Term "initial consideration" in Section IX Creates an Ambiguity**

Appellee's interpretation of Section IX focuses on the term "initial consideration" and its relation to the Chairman's discretion to recommend funding of the bonus pool.

> The second sentence of § IX plainly states that the [Chairman's] "**initial consideration** in determining whether to recommend to the Compensation Committee to fund the MSIP bonus pool will be an evaluation of M&S [marketing and sales] as an organization in light of the Company's overriding principles of ethical conduct and

2

>  integrity."  But nothing in the Plan states that this consideration trumps the ultimate discretion granted in the Plan.

*Appellant's Br. at 9* (emphasis added).  Appellee interprets "initial consideration" to mean that the Chairman's evaluation involves other considerations that are not set forth in Section IX. Specifically, Appellee argues that "input from management" and "dynamic factors" are also relevant considerations.  *Appellee's Br. at 10* ("One would expect that a proper exercise of discretion would include **input from management** and the consideration of **dynamic factors** including those constraints [placed on a corporation in bankruptcy]—especially where, as here, management ultimately has the sole discretion to decide whether to pay out any bonuses from the pool once it is funded.") (emphasis added).

Neither "dynamic factors" nor "input from management" are found anywhere in the Plan and adding such terms to supplement Section IX is simply improper.  *See Southern Cal. Gas Co. v. Ventura Pipe Line Constr. Co.*, 309 P.2d 849, 852 (Cal. Ct. App. 1957) (citation omitted) ("In construing a contract which purports on its face to be a complete expression of the entire agreement, courts will not add thereto another term, about which the agreement is silent.").

California law on contract interpretation requires that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638 (2008).  "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Cal. Civ. Code § 1636 (2008); *see also Universal Sales Corp., Ltd. v. Cal. Press Mfg. Co.,* 128 P.2d 665, 671 (Cal. 1942).  "It is a general rule governing the construction of contracts that unless a contract is ambiguous, its meaning must be determined from the words used; and courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein."  *Southern Cal. Gas Co.,* 309 P.2d at 852.

3

"An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing. An ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence." *Solis v. Kirkwood Resort Co.*, 114 Cal Rptr. 2d 365, 269 (Cal. Ct. App. 2001) (internal citation omitted). "Even if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible meaning to which the language of the contract is yet reasonably susceptible." *Morey v. Vannucci*, 75 Cal. Rptr. 2d 573, 578 (Cal. Ct. App. 1998). If it is not feasible to determine from the contract alone the meaning the parties gave to the words they used, the parties should be given a full opportunity to produce evidence of the facts, circumstances and conditions surrounding the contract's execution. *See Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co, Inc.,* 442 P.2d 641, 644-45 (Cal. 1968). However, "in the absence of substantial parol evidence tending to solve an ambiguity, the terms of the writing will not be extended by implication." *Southern Cal. Gas Co.,* 309 P.2d at 851-52.

In the present case, no parol evidence was submitted by Calpine to support its interpretation of Section IX. Moreover, Appellee's contract interpretation conflicts with the express language in Section IX which provides, after Calpine's "guiding principles" are discussed, that the Chairman "will determine whether or not to recommend funding of the MSIP bonus <u>on the basis of these guiding principles</u>." *Doc. #1, Plan, § IX.* This sentence clearly supports Appellant's position that all of the considerations that the Chairman should take into account are contained in Section IX. If these considerations were met, the Chairman should have recommended that the bonus pool be funded.

Appellant submits that the language at issue in Section IX can be internally reconciled two ways. First, the "initial consideration" set forth in the second sentence of the first paragraph

4

refers to "an evaluation of M&S as an organization" and an evaluation of "each M&S employee" is the other consideration, as set forth in the third sentence. Alternatively, the "initial consideration" refers to <u>both</u> "an evaluation of M&S as an organization" <u>and</u> "each M&S employee" and the monetary "goal of three times the adjusted MtS value" is the other consideration, as set forth in the second paragraph. The contract language is reasonably susceptible to either interpretation.

Appellant's interpretation reconciles all of the language in Section IX so as to give effect to every part, with each term helping to interpret the other. It is also consistent with the Plan's primary objectives to "reward value creation" and "drive employee behavior towards [Calpine's] overriding principles of ethical conduct and integrity . . . ." *Doc. #1, Plan, § I*; *see also Kelly v. Skytel Commc'ns, Inc.*, No. 00-17089, 2002 WL 46163, at *3 (9th Cir. Feb. 25, 2002) ("Rather, the agreement contemplates that [the company] will exercise its discretion consistent with its promise to provide its Account Executives with an incentive compensation arrangement that offers them an opportunity to earn over-the-maximum commissions when they have demonstrated extraordinary effort and made extraordinary sales.").

Any uncertainty about the language in Section IX should be interpreted against Calpine because the company drafted the Plan. *See* Cal. Civ. Code § 1654 (2008) ("In cases of uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."); *see, e.g.*, *Solis*, 114 Cal Rptr. 2d at 269 ("[A]n ambiguity about the scope of a release should normally be construed against the drafter, as with other contracts.").

5

### B.  Appellee's Interpretation of the Term "sole discretion" in Section IX Creates an Ambiguity

Appellee's interpretation of the term "sole discretion" in Section IX creates an ambiguity for two reasons. First, regarding the Chairman's discretion to recommend funding of the bonus pool, Appellee equates "sole discretion" with "unrestricted discretion." *Appellee's Br. at 11-12* ("[T]he Calpine Plan here, expressly confers unrestricted discretion"); *Appellee's Br. at 14* ("The Calpine Plan provides just such a grant of 'unrestricted discretion.'"). Second, Appellee ignores the context in which the term "sole discretion" is used in the Plan and confuses the Chairman's sole discretion with respect to funding the bonus pool with management's sole discretion with respect to the distribution and payout of individual bonuses.[2]

The terms "sole discretion" and "unrestricted discretion" have two entirely different meanings and, thus, cannot be used interchangeably with respect to the Plan. The term "sole" means "functioning independently and without assistance or interference" or "belonging exclusively or otherwise limited to one usually specified individual, unit, or group." *Merriam-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/sole (last visited July 16, 2008). The term "sole discretion" means "[a]n individual's power to make decisions without anyone else's advice or consent." *Black's Law Dictionary* 499 (8th ed. 2004). The term "unrestricted," on the other hand, means "without restrictions; without conditions; absolute." *Ballantine's Law Dictionary* 1323 (3d ed. 1969). Clearly, the Chairman's "sole discretion" was not unrestricted according to the plain meaning of the contract language. *See, e.g.*, *Kelly*, 2002 WL 46163, at *2-3 (stating that "sole power" granted to the company's Excellence Committee

---

[2] In fact, in its papers to the court below, Appellee referred to Calpine's management as having exercised the Chairman's discretionary power over funding of the bonus pool. *Debtor's Reply at p. 4* ("Calpine decided not to recommend that the Compensation Committee fund the bonus pool."). Now, in response to Appellant's argument that Calpine's management usurped the Chairman's discretionary power, *see Appellant Br. at 13* ("Calpine's management usurped the Chairman's discretionary power and arbitrarily substituted new factors for the criteria set forth in Section IX"), Appellee substitutes the Chairman for "Calpine" and contends that "the Office of the Chairman did not recommend funding the bonus pool." *Appellee's Br. at 4.*

6

"does not allow the company unlimited discretion in awarding over-the-maximum commissions."). Rather, the Chairman's discretion was expressly restricted to the considerations spelled out in Section IX of the Plan, according to the most natural reading of this section. By claiming that the Chairman had unrestricted discretion, Appellee has changed the meaning of Section IX.

In addition, the context in which the term "sole discretion" is found in Sections IX is very different, i.e. qualified, from the context in which the term appears elsewhere in the Plan, i.e. unqualified. For example, Calpine's management is given sole discretion over the distribution and payout of individual bonuses, pursuant to Section XV.

> Distribution and payout of all MSIP bonus amounts are at the sole discretion of Company management.

*Doc #1, Plan, § XV*. Here, management's discretion is unqualified by any other terms.[3]

Similarly, the Chairman is given sole discretion to make a "Teamwork Adjustment," pursuant to Section VIII.

> Performance in this category will be rated by the Office of the Chair, in its sole discretion, and may adjust the recommend [sic] level of the MSIP baseline pool by up to plus or minus 15%.

*Doc #1, Plan, § VIII*. Here, too, the Chairman's discretion is unqualified.

Unlike the term "sole discretion" in Sections VIII and XV, the term "sole discretion" in Section IX is qualified by Calpine's guiding principles as set forth in the last sentence of the first paragraph: "The office of the Chairman, in its sole discretion, will determine whether or not to recommend funding of the MSIP bonus <u>on the basis of these guiding principles</u>." *Doc. #1, Plan, § IX*. Appellee, however, makes no distinction between the different uses of the term "sole

---

[3] Appellant notes, however, that management's discretionary power in Section XV is qualified, to some extent, by the language in Section XI which provides that "[b]onus checks are distributed following the close of the calendar year and are usually paid in March of the following year." *Plan, §XI*.

7

discretion" in the Plan. Accordingly, Appellee's interpretation of the term "sole discretion" has created an ambiguity.

Importantly, Appellee's interpretation of the term "sole discretion" is flawed because it renders the last sentence of the first paragraph in Section IX nugatory, inoperative and meaningless. Thus, Appellee violates a cardinal principle of contract interpretation. *See* Cal. Civ. Code § 1641 ("[T]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 80 Cal. Rptr. 329, 349 (Cal. Ct. App. 1998) ("Courts must interpret contractual language in a manner which gives force and effect to *every* provision, and not in a way which renders some clauses nugatory, inoperative or meaningless."); *ACL Technologies, Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 22 Cal. Rptr. 2d 206, 213 (Cal. Ct. App. 1993) ("[C]ontracts – even insurance contracts -- are construed to avoid rendering terms surplusage."); *Restatement of Law (Second) Contracts* § 203(a) (1981) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). Appellee's contract interpretation must therefore be rejected.

## POINT II

### APPELLEE'S ARGUMENTS THAT THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND THE DOCTRINE OF PROMISSORY ESTOPPEL DO NOT APPLY ARE WITHOUT MERIT

Both the implied covenant of good faith and fair dealing and the doctrine of promissory estoppel apply to support Appellant's claim and require Appellee to adhere to the terms of the Plan, notwithstanding Appellee's arguments to the contrary.

Appellee's argument that Appellant's use of the implied covenant of good faith and fair dealing "rewrites the terms of §§ IX and XV of the Plan," *see Appellee's Br., Point II,* is baseless. As shown above, it is Appellee who seeks to rewrite the Plan which does not provide Appellee with absolute or unrestricted discretion.

Appellee's reliance on *Brandt v. Lockheed Missiles & Space Co.*, 201 Cal. Rptr. 746, 748 (Cal. Ct. App. 1984) is completely misplaced and its claim that the facts in that case "are not materially distinguishable form the facts before this Court," *Appellee Br. at 12*, is pure fiction. There is no language in the Plan similar to the pertinent contract language in *Brant* which provides that "[the Invention Awards Committee] may, but is not obligated to, grant to the inventor-employee a Special Invention Award." *Brandt*, 201 Cal. Rprt. at 748 (emphasis added).

Appellee's position that it may, without restriction, unilaterally modify or terminate the benefits of the Plan for 2005, after the year ended and Mr. Daley rendered an extraordinary performance, violates the implied covenant of good faith and fair dealing. As set forth in detail in Point II of its initial brief, Appellant only seeks to invoke the implied covenant of good faith and fair dealing to effectuate the terms of the Plan and Mr. Daley's reasonable and legitimate expectation that his 2005 bonus would be paid.

Similarly, Appellee's argument that the doctrine of promissory estoppel does not apply, *see Appellee's Br., Point III*, is baseless. Appellant is not using this equitable remedy "to imply terms in the contract or to imply a contract that does not exist." *Appellee's Br. at 15*. Nor is Appellant seeking "rough justice" to override the plain terms of the Plan. *Id.*

Moreover, Appellee's statement that the Plan "contained no representations or promises guaranteeing a bonus" ignores Appellant's point entirely. Specifically, Appellee never disputed that the President of Calpine Energy Services told Mr. Daley, in January 2006, that everyone with a "formulaic" plan who met their benchmarks would receive their expected bonus, or that Calpine's Chairman also told other employees in the M&S group, in March 2006, that 2005 performance bonuses would be paid. Since Appellee never denied that Calpine's management made promises to Mr. Daley <u>outside</u> the Plan, Appellant claim based upon the doctrine of promissory estoppel is well founded.

## **CONCLUSION**

Accordingly, the Bankruptcy Court's dismissal of Mr. Daley's claim on the pleadings was an abuse of discretion. This Court should reverse the Bankruptcy Court and allow Mr. Daley's claim, while remanding the matter solely to determine the amount of the claim. Alternatively, the entire matter should be remanded so that the parties can engage in discovery and offer parol evidence to the Bankruptcy Court.

Dated: New York, New York
      July 17, 2008                      WANDER & ASSOCIATES, P.C.

By: /s/ David Wander
    David Wander (DW-0145)
641 Lexington Avenue, 21st Floor
New York, New York 10022
Telephone: (212) 751-9700
*Attorneys for Appellant Mark Daley*

10

**WANDER & ASSOCIATES, P.C.**

Attorneys for Appellant Mark Daley
641 Lexington Avenue, 21st Floor
New York, New York 10022
(212) 751-9700
David H. Wander (DHW#0145)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| CALPINE CORPORATION, et al., | Case No. 05-60200 (BRL) |
| Reorganized Debtors. | |

------------------------------------X

| | |
|---|---|
| MARK DALEY, | |
| Appellant, | Case No. 1:08-cv-3880 (DAB) |
| v. | ECF Case |
| CALPINE CORPORATION, et al., | |
| Appellees. | |

------------------------------------X

STATE OF NEW YORK    }
                    }ss.:
COUNTY OF NEW YORK  }

**CERTIFICATION OF SERVICE BY ECF**

Steven I. Super, under the penalty of perjury, certifies the following:

I am not a party to this proceeding, over 18 years of age and reside in New York, New York.  On July 17, 2008, I served the Appellant Mark Daley's Reply Brief**,** via the Electronic Case Files system and email.

_____
Steven I. Super

**SERVICE LIST**

Anthony Casey, Esq. (by email: ACasey@Kirkland.com)
KIRKLAND & ELLIS, LLP
153 East 53rd Street
New York, NY 10022-4611

Mark S. Lillie, Esq. (by email: MLillie@Kirkland.com)
KIRKLAND & ELLIS, LLP
153 East 53rd Street
New York, NY 10022-4611

Edward O Sassower, Esq. (by email: ESassower@Kirkland.com)
KIRKLAND & ELLIS, LLP
153 East 53rd Street
New York, NY 10022-4611

David R. Seligman, Esq. (by email: DSeligman@Kirkland.com)
KIRKLAND & ELLIS, LLP
153 East 53rd Street
New York, NY 10022-4611